# SIXTO *v.* SARRIA.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR.
THE DISTRICT OP PORTO RICO.

No. 40. Submitted November 3, 1904.—Decided January 3, 1905.

Under the law of Porto Rico while an heir to an intestate may assert his rights against one already designated heir *ab intestato* any time within five years after the decree of designation, the heir so designated may within the five year period collect debts due to the intestate's estate and, where the payment is made in good faith and under the order of the court into which the money was paid by the debtor, and without notice of existence and claims of other heirs, discharge the debtor from liability, notwithstanding such other heirs subsequently assert their claims and are also designated as joint heirs *ab intestato*.

Where, however, the debtor has legal notice from the court where the matter is pending that one not originally designated has asserted and is prosecuting a claim to recognition as an heir *ab intestato*, any payments he makes to the one first designated are at his own peril and liability to account to the other heir after his claim has been established for his proportionate share, and the debtor is not protected by a decree and order of the court directing payment to the assignee of the heir originally designated in a proceeding to which such asserting heir was not a party.

Where the payment to the heir originally designated is made before the debt is due and after the other heir has asserted his claim, and under circumstances indicating collusion, it is for the jury to determine whether the payment was made in good faith and without knowledge of the rights of the asserting heir.

THIS is a writ of error bringing in review the proceedings of the District Court of the United States for the District of Porto Rico.

The original action was in assumpsit brought by Adolfo Sixto, an alien, and a subject of the King of Spain, against Laureano Sarria, a citizen of Porto Rico. The declaration set forth in substance:

That on November 27, 1892, the defendant was indebted to one Manuel Sixto, since deceased, in the sum of $16,000, Spanish money, with interest from May 15 of the same year, which sum said Sarria had promised to pay in four annual in-

stallments, falling due respectively on the fifteenth day of May of each and every year from 1893 until 1896, inclusive. That the said Manuel Sixto departed this life on November 27, 1892, leaving two children, plaintiff and one Maria Belen Sixto Melendez, as his heirs at law. That as such heir the plaintiff was entitled to one-half of the indebtedness of $16,000, Spanish money, with interest at the rate of eight per cent from May 15, 1892. The declaration contained the usual averments in assumpsit of promise and default. The defendant filed a plea and amended plea to this declaration which set up the general issue, and for further plea averred :

" And for a further and second plea to the said declaration, the defendant says that on the fifteenth day of May, eighteen hundred and ninety-two, the defendant became indebted in the sum of sixteen thousand dollars (16,000) Mexican dollars, money then current in Porto Rico, to one Manuel Sixto, on account of the purchase price of a farm situated in the island of Vieques, district of Porto Rico, and called ' Monte Santo '; that on the said fifteenth day of May, eighteen hundred and ninety-two, the defendant made and constituted a mortgage upon the said farm in favor of the said Sixto, as security for the payment of the aforesaid amount of sixteen thousand (16,000) Mexican dollars, together with a certain interest as stipulated in the said instrument of mortgage; that thereafter the said mortgage was duly registered in the registry of property of Humacao, Porto Rico, on the eleventh day of July, eighteen hundred and ninety-two; that the payment of the aforesaid sum of sixteen thousand (16,000) Mexican dollars, as provided for in the said instrument of mortgage, was to be made in the manner following, to wit: four thousand (4,000) dollars on the fifteenth day of May, eighteen hundred and ninety-three, and four thousand (4,000) dollars on the fifteenth day of May, of the years eighteen hundred and ninety-four, eighteen hundred and ninety-five, and eighteen hundred and ninety-six. And the defendant further says that the aforesaid Emanuel Sixto departed this life on the twenty-seventh day of

November, eighteen hundred and ninety-two, before any of the installments aforesaid had fallen due; that the said Sixto died intestate, and soon after his death, to wit, in the year eighteen hundred and ninety-three, judicial proceedings touching and respecting the settlement and inheritance of the estate of the said Manuel Sixto, deceased, and which said proceedings are known in the law of Porto Rico as 'proceedings *ab intestato,*' were instituted in the court of first instance of Humacao, Porto Rico, the said court being then and there a court of record and of general jurisdiction, and the said court in said proceedings by a decree dated the fifteenth day of June, eighteen hundred and ninety-three, ordered the said defendant to pay into and deposit with the said court all sums of money then due by the said defendant to the said estate of the said Manuel Sixto, deceased, by virtue of the aforesaid mortgage, and the defendant thereupon and in obedience to the said order of the said court did on the twenty-second day of June, eighteen hundred and ninety-three, consign and deposit with the said court and did place at the disposal of the same the sum of four thousand (4,000) pesos of the money then current in Porto Rico, and the further sum of eight hundred twenty-two and fifty-two hundredths (822.52) dollars of the same kind of money, the first sum being the amount of the first installment due May fifteenth, eighteen hundred and ninety-three, and the second sum being the interest due on the aforesaid mortgage credit up to the first of June, eighteen hundred and ninety-three. And the said decree of the said court was duly entered before the commencement of this action and still is in full force and effect.

"And the defendant further says, as to the third installment above mentioned, that by judgment of the Supreme Court of Porto Rico, then known as the 'audiencia territorial,' dated the eighteenth day of February, eighteen hundred and ninety-six, rendered and entered in certain foreclosure proceedings had before the said court on appeal from the court of first instance of Humacao, in which proceedings the

defendant and one Antonio Roig y Torruellas were plaintiffs, and which said proceedings the said Roig, as owner of the third and fourth installments of the mortgage before mentioned, sought to foreclose the same to the extent of the third installment aforesaid, together with certain interest, the defendant was found to be indebted to the said plaintiff, Roig, in the amount of the third installment aforesaid, together with the corresponding interest, and was ordered to pay the amount of said indebtedness so found due by the said judgment to the said Roig within the period of thirty days thereof, and the said judgment further provided for execution to issue upon the non-compliance with the terms thereof by the defendant. Said judgment was duly entered before the commencement of this suit and is still in force and effect. And the said defendant thereupon and in compliance with the said judgment of the said court thereafter paid unto the said plaintiff, Roig, the amounts ordered to be paid by the said judgment, to wit, the amount of the third installment of the aforesaid mortgage, together with the corresponding interest. And all of this the defendant is ready to verify."

The additional or amended plea sets forth:

"And the defendant as to the second installment aforesaid says that he has paid the same, together with the corresponding interest, on the 4th day of April, 1894, to one Belen Sixto, who was then the record owner of said mortgage credit, and who had previously been declared heir *ab intestato* of said Manuel Sixto, deceased, by the order and decree of the proper court, to wit, the court of the first instance of Humacao, respectively on the 21st and 23d of the month of November, 1893.

"And as to the third and fourth installments the defendant says that on the 11th day of September, 1894, the aforesaid Belen Sixto, for a valuable consideration, ceded and transferred the said two installments to one Antonio Roig y Torruellas; that thereupon the said transfer was duly recorded and the said two installments appeared upon the record to

be the property of the said Roig, and thereupon, to wit, on or about the 16th day of May, 1896, the defendant paid the said Roig the amount of said two installments, together with all interest due."

The bill of exceptions brings into the case the testimony and the rulings and charge of the court. The facts developed are: Manuel Sixto sold a farm to the defendant Sarria for $16,000 Mexican money, payable in four equal installments with interest. A mortgage was taken upon the property to secure the payment of the purchase price. Manuel Sixto y Andino died November 27, 1892, leaving no issue except two natural children, a daughter by the name of Maria Belen Sixto y Melendez (hereafter called Maria Belen), who lived in Vieques, and the plaintiff in error, a son, who lived in the island of St. Thomas. After the death of Manuel Sixto, the daughter, Maria Belen, filed her petition in the court of first instance of Humacao, Porto Rico, alleging that she was the only heir of Manuel Sixto, deceased, and praying the court to declare her heir *ab intestato* according to the provisions of section 980, and following, of the Code of Porto Rico then in force. Upon June 22, 1893, the defendant in error, Sarria, paid into court, where the petition of Maria Belen was then pending, the first installment due, with interest. On November 21, 1893, Maria Belen, by decree of the court, was adjudged heir *ab intestato* of Manuel Sixto, without prejudice to the rights of third parties. On the twenty-fifth of the same month the assets received by the administrator of Manuel Sixto, who had been appointed during the proceeding, and the money paid into court by defendant in error, by order of the court were made over to Maria Belen as sole heir *ab intestato*. On November 24, 1893, the plaintiff in error, Adolfo Sixto, presented to the same court of first instance his petition to be declared the heir of Manuel Sixto, deceased (jointly entitled with Maria Belen), invoking the exercise by the court of "voluntary jurisdiction" under the section of the code whereby Maria Belen had been adjudged heir. To

this petition Maria Belen answered, alleging that she had been duly declared the only heir of Manuel Sixto, and that the plaintiff in error could only contest her right by a " contentious suit " (*expediente contensioso*).

The court sustained this contention, and Sixto appealed, but later abandoned the appeal, and on April 4, 1894, began a suit in the form of a contentious proceeding, making Maria Belen a party defendant, and praying the court to declare him (Adolfo Sixto) an equal heir with her in the estate of Manuel Sixto, and asking the court to issue an order to the registrar of property, requiring him to make a cautionary entry in the register concerning the property affected by this suit, and also requiring the defendant in error to retain, at the disposition of the court, the sums still owing to the estate of Manuel Sixto. On June 2, 1894, a notice was accordingly issued to Sarria and one to the registrar. The one to Sarria was issued on June 5, 1894, and the one to the registrar on June 4, 1894. The defendant, Maria Belen, being notified of these orders, on June 26, 1894, answered the plaintiff's petition, and in her answer prayed that the interlocutory order of June 2, 1894, be vacated and ' the notices canceled. On August 30, 1894, the prayer of defendant's answer was granted by the court, and orders issued accordingly to the registrar and to Sarria, and notice was given to the solicitor of the plaintiff. On September 1, 1894, the order reached the registrar, and the order of cancellation was made on the books on September 3, 1894. On September 3, 1894, the plaintiff filed a petition for an appeal from the court's order of August 30, 1894, praying that it be allowed " in both effects," that is, (Code, sec. 383), with the effect of a review and stay of proceedings, but the judge granted the same with one effect only, that is, for a review of the judgment. In the appellate court, on November 17, 1894, that court held that the allowance of both effects had been wrongfully denied, and ordered that the appeal be considered as having been taken for both effects. On December 22, 1894, the appellate court granted a further

order, that Sarria, the defendant in error, be notified of his obligation under the decree of June 2, 1894, which order was accordingly issued. On November 29, 1895, the appellate court (audiencia) rendered its decision on the merits of the appeal, and reversed the order of August 30, 1894, and reaffirmed the order of June 2, 1894, in its validity and regularity. The court used the following language:

"That which was ordered in the decree appealed from regarding Mr. Laureano Sarria is hereby set aside, leaving in force the requisition ordered and directed to said Sarria on June 2 by the judge of first instance until the resolution of the pending appeal."

This decision was certified to the court below in January, 1896, and in March following the solicitor of the plaintiff requested the court to notify Sarria and the registrar that the order of June 2, 1894, was still in force, which was accordingly done, and the defendant in error made reply thereto as follows:

"Having received notice that the installment of the mortgage had been transferred to Mr. Antonio Roig, who has recorded said transfer in the registry of property, and supposing that he will proceed to collect the same judicially as he did the previous installment, he is unable to accept the notification, and he will appear before the audiencia in the premises."

The registrar refused to comply with the order for these reasons: "First, because subsequent to the illegal cancellation of the cautionary notice the property as well as the encumbrance had been transferred on the registry; and, second, because the mortgage law contained no provision regarding the form of carrying into effect such an order." Thereafter the plaintiff asked the court for a further order to the registrar, but this was denied.

The case proceeded to proof and argument, and on December 15, 1896, a final decision was rendered, adverse to the plaintiff, from which decree he took an appeal, which was allowed " in both effects." The appeal was also allowed from

the order denying a further order to the registrar. On February 2, 1897, the appellate court consolidated the appeals and ordered the suspension of further proceedings until final decision.

In the meantime, on April 26, 1896, by an order of the court of the first instance, Sarria was allowed to withdraw his deposit of the third installment. The order recited that one Roig had become the purchaser from Maria Belen of the third and fourth installments, and had recovered judgment in the audiencia against Sarria for the third installment, found that Maria Belen had the right to transfer these installments, and ordered a copy of the decree to be placed in the records by the actuary.

Thus the matter remained until after the conclusion of the war with Spain, resulting in a change of sovereignty of Porto Rico.

By the military government, an order was issued abolishing the territorial audiencia, the appellate court aforesaid, creating in its place the District Court of San Juan. On September 29, 1899, that court rendered its final decision upon both appeals, reversing the action of the court below, and deciding the plaintiff to be legally proved the heir of Manuel Sixto. The trial in the United States District Court in the present suit resulted in a verdict and judgment for the defendant.

*Mr. N. B. K. Pettingill* for plaintiff in error.

There was no appearance or brief for defendant in error.

MR. JUSTICE DAY, after making the foregoing statement of facts, delivered the opinion of the court.

It is evident from the foregoing statement of facts that the controversy, as it appeared in the United States District Court, was resolved into the question whether Adolfo Sixto, who had been duly adjudged the co-heir with Maria Belen of Manuel

Sixto, deceased, was entitled to recover one-half of the amount due on the mortgage debt which the defendant Sarria claimed to have discharged by legal payments. The recovery sought was for one-half of the four installments of purchase money due respectively on the fifteenth day of May in the years from 1893 until 1896, inclusive. The defendant interposed different defenses to different installments of the debt. We will proceed to consider them, together with the charge and rulings of the court concerning the same.

Referring to the first and second installments, we find it to be the contention of the plaintiff in error that Maria Belen, having been adjudged heir *ab intestato* under a decree which expressly reserved the rights of third parties, no payment could have been lawfully made to her as against the rights of the plaintiff in error, and that if any such payment was made it was subject to the risk that the subsequent established rights of the plaintiff in error might entitle him to recover from Sarria one-half of such payments. Upon this subject the court charged the jury:

" On February 15, 1894, she [Maria Belen] having been declared the heir, the entry was made of that fact in the registry (of property). I say to you as a matter of law, that that declaration of her heirship was without prejudice to the rights of third parties—and that meant that if any other person showed himself afterwards to be an heir he was entitled to a proper proportion of the estate, but so far as a collection of debts, and so far as a proper attention to the assets were concerned and the control of them, she became entitled to attend to that."

Upon the same subject the plaintiff in error had requested the court to charge:

" As the *ex parte* decree declaring Belen Sixto the heir of Manuel Sixto expressly saved the rights of third parties, that was notice to the defendant that any payment made to her was made at his peril as against the other true heirs; and, as defendant was not required by any legal authority to pay the

first two payments to Belen Sixto, and as the plaintiff is shown in truth to have been an equal heir with Belen Sixto, the plaintiff is entitled to recover one-half of those two payments."

So far as this contention is concerned, we think the court below was right. The sections of the Code of Porto Rico (War Department translation), under which Maria Belen was declared the heir *ab intestato* of Manuel Sixto, are as follows:

" 976. After the measures indispensable for the security of the property prescribed in the foregoing section have been taken, and without prejudice to including in the same proceedings the making of the inventory, the designation of heirs *ab intestato* shall be proceeded with in a separate record.

" 977. This designation may also be made at the instance of the interested parties, without the necessity of previously taking the steps mentioned, in cases in which they are not necessary and in which the institution of intestate proceedings is not requested.

" 978. Heirs *ab intestato*, who are descendants of the deceased, may obtain a declaration of their rights by proving, with the proper documents or with the evidence obtainable, the death of the person whose estate is in question, their relationship to the same, and with the evidence of witnesses that said person died intestate, and that they, or the persons whom they designate, are his only heirs.

"The services of a solicitor or attorney are not necessary in order to present this claim.

"979. The deputy public prosecutor shall be cited to appear at said proceeding, to whom the record shall afterward be referred for the period of six days for his report thereon.

" Should he find the proof insufficient, a hearing shall be granted to the interested parties in order that they may cure the defect.

" When the deputy public prosecutor requests it, or the judge considers it necessary, the documents presented shall be compared with the originals.

"980. When the foregoing steps have been taken, the judge shall, without further proceedings, make a ruling designating the heirs *ab intestato* should he deem it proper, or he may refuse to make such declaration, reserving the rights of the claimants to institute an ordinary action. This ruling may be appealed from both for review and a stay of proceedings. . . .

" 1000. After the declaration of heirs *ab intestato* has been made, by a final judgment or ruling, the proceedings shall be continued according to the procedure prescribed for testamentary proceedings.

" 1001. The judge shall order that there be delivered to the heirs instituted all the property, books, and papers of the intestate, and that the administrator render an account of his administration to them, the judicial intervention ceasing."

It is argued that this appointment of the heir *ab intestato* is subject to the limitation that the rights of the heir are not fixed until five years have elapsed from the date of the designation by the court proceedings, and in support of this contention certain articles of the Mortgage Law of Porto Rico are cited:

" 2. In the registries mentioned in the preceding article shall be recorded:

" 1. Instruments transferring or declaring ownership of realty, or of property rights thereto.

" 2. Instruments by which rights of use, use and occupancy, emphyteusis, mortgage, annuity, servitudes, and any others by which states are created, acknowledged modified or extinguished. . . .

" 23. The instruments mentioned in articles 2 and 5, which are not duly recorded or entered in the registry, cannot prejudice third persons.

" The record of real property and property rights, acquired through an inheritance or legacy, shall not prejudice third persons until five years have elapsed since the date thereof, excepting in cases of testate or intestate inheritances, legacies and additions thereto, when left to legal heirs.

" 381. Property acquired through inheritance or legacy can-

not be cleared until five years have elapsed from the date of their record in the registry."

But we think this limitation of five years was intended to permit such heirs at law or parties beneficially interested in the estate to assert their rights as against the heir and the property in his hands, and to prevent its transfer except subject to the right of such persons to assert their claims within the permitted limitation. We are here dealing with the right to collect the assets, and the Code provides, secs. 1000, 1001, that after the designation of the heir or heirs *ab intestato* by a final judgment or ruling of the court the proceedings shall be continued according to the procedure prescribed for testamentary proceedings, and the judge may order that all the property, books and papers of the intestate be turned over to the heirs, and that the administrator render his account of his administration of the estate, and thereupon judicial intervention shall cease. It seems to us manifest that the effect of these proceedings is to permit the heir *ab intestato*, after such final decision, to receive and collect the estate. It may be that others will establish an interest in the property for which the heir will have to respond, and it is specially provided that, for the purpose of transfer, property shall not be deemed clear until after five years have elapsed. But this does not require that the collection of debts shall be delayed for a like period or that they shall be paid to the legally declared heir or heirs, upon pain of being required to respond to others who may within the limitation permitted establish a right to the property. Such construction would seem to be unreasonable, and we are cited to no authority that goes to that extent. It is opposed to the practice of the civil law upon which the Code of Porto Rico is based, in which system the heir by intestacy corresponded with the common law administrator, except that the Roman heir was entitled to administer both the real and personal estate. Story on Conflict of laws, § 508.

In the present case the first installment was due on May 15,

1893, and was paid into court of first instance according to its order and a receipt given therefor under the seal of the court on June 22, 1893. This was done before any proceedings were instituted by the plaintiff in error. The payment was made under the order of the court, and we see no reason why the defendant in error should not be discharged thereby.

As to the second installment, other considerations apply. Sarria testified that while this installment fell due on May 15, 1894, he paid the same on April 1, 1894, to Maria Belen, which payment, he says, was solemnized by a notarial act duly acknowledged. As to this payment, the court in its charge took the view that the contentious suit of Adolfo Sixto was not commenced until April 4, 1894, of which fact Sarria was not notified until June 5, 1894, and therefore Maria Belen had the right to collect this payment. The suit of April 4, 1894, was the one begun by Adolfo Sixto after the decision against him in the court of first instance, holding that he could only contest the right of Maria Belen by a contentious proceeding, from which the plaintiff in error took an appeal, but abandoned the same, and on April 4, 1894, amended the suit to a contentious proceeding, making Maria Belen a party defendant, and seeking for an order to the registrar to make a cautionary order touching the property in controversy, and also an order to the defendant in error requiring him to retain at the disposition of the court whatever sums he owed to the estate of Manuel Sixto, deceased. On the day of the beginning of this contentious suit, Sarria paid to Maria Belen, anticipating the maturity of the installment by more than a month, the amount which would have fallen due on the fifteenth day of May following.

We think that, in view of the testimony produced, the validity of this payment should have been submitted to the jury under proper instructions. The plaintiff testified that he was known to the defendant, and that the latter was well aware that he was a son of Manuel Sixto, deceased. The proceeding to declare his rights had been begun. It is evident

from a letter written to him on November 11, 1892, by Maria Belen, that she recognized the plaintiff in error as her brother, for in this letter she announces the death of "our beloved father," subscribed herself as "sister," and requests Sixto to come over to Vieques at once, as his presence was necessary in order to collect money coming from the estate. Under these circumstances, the question of whether Sarria had notice of the plaintiff in error's rights and demands, and whether this was a valid payment, or was made in anticipation of the possible claims of Adolfo Sixto, with intent to deprive him of his rights, should have been left to the jury, instead of the instruction given which practically required a finding for the defendant in error.

As to the third and fourth installments, the defendant claims to have paid these to one Roig. It appears that these alleged payments to Roig were evidenced by certain notarial instruments, which became of record in the office of the registrar of deeds, and, as is recited in that record, Roig appears to have been the declared purchaser of the third and fourth installment by assignment from Maria Belen, and the court of first instance, on April 25, 1896, at the instance of Sarria, permitted him to withdraw the third installment, and declared Roig entitled to collect the third and fourth installments. Upon this subject the court charged the jury:

"In this contentious suit by Adolfo Sixto against Belen, this defendant, Sarria, was ordered on June 2, 1894, to pay into court whatever money he might be owing. That order was served on Sarria on June 5, 1894, and afterwards that court decided that Sixto, the plaintiff in this suit, was not entitled to attach this money. He obtained an appeal from that judgment, but not from that portion of it that canceled the annotation made in the registry of deeds of the attachment of that fund. Subsequently, on November 17, 1894, an appeal was allowed in the upper court from that portion of it, but no notice was given as to Sarria, who was merely a garnishee in the suit, and who had received no notice not to pay over

the money until the lower court decided whether he had the right to pay it over. Between the time the court decided the attachment and the time the appeal was allowed in the upper court, Belen Sixto assigned to Roig the third and fourth installments. I say to you, as a matter of law, that there was nothing to hinder her from doing that at that time; she had, in law, the right to do it."

The counsel for the plaintiff requested the court, upon the same subject, to charge:

" As it is shown by the uncontradicted evidence that the judge of the court of first instance of Humacao was entirely without authority or jurisdiction to issue his order on August 30, 1894, directing the registrar to make annotation on his books of said order, said order to the registrar was void and the annotation made by the registrar was void, and the former annotation remained in force, which was notice to all the world, including this defendant, that the plaintiff had an interest in those payments such as might be declared by the court; and the court having afterwards decided that the plaintiff here is entitled to a one-half interest in said estate, the plaintiff is now entitled to recover one-half of the last two payments, with interest."

It appears that Adolfo Sixto was not a party to the suit between Roig and Sarria, in which it is declared that Roig was held entitled to recover the third installment, and if Sarria had notice of the pendency of the suit to establish the rights of Adolfo Sixto in such wise as to be bound by the result thereof, he could not prevent Sixto's recovering an interest in the property by wrongfully paying it over in the proceedings to which the plaintiff in error was not a party. The court below seems to have given its charge upon this subject upon the theory that the order of August 30, 1894, was not appealed from in such wise as to prevent Sarria from paying the third and fourth installments to the assignee Roig, and it is said that he was merely a garnishee in the suit, and had then received no notice not to pay over the money

until the lower court had decided whether he had the right to pay it over. The payment of the third and fourth installments was made to Roig by permitting Sarria, in the court of .first instance, to withdraw the installment which he had paid into court under the order of June 2, 1894. These installments were paid to Roig on May 16, 1896, but in the attitude of the. suit then pending to establish the rights of Adolfo Sixto, and Sarria's knowledge thereof, could the latter legally make these payments so as to conclude the rights of the plaintiff in error ? It is true that the lower court on August 30, 1894, had held in favor of Maria Belen, vacating the notice sent to Sarria and the cautionary notices to the registrar, and the plaintiff in error had prayed an appeal " in both effects," i. e., for a review of the order and. a stay of proceedings, but was refused an appeal in the latter aspect, from which refusal he also appealed, and this was the attitude of the case at the time of the alleged purchase by Roig on September 11, 1894. On November 17, 1894, the audiencia considered the application of Sixto for the enlargement of the appeal, and held that such allowance was wrongfully denied in the lower court, and ordered that the appeal be " considered as having been taken for both effects." On January 8, 1895, Sarria was notified of this order, and appeared and asked that a clear and detailed statement be given him " as to what he was to comply with." Thereupon a new ex-- planatory order was directed to Sarria, informing him that the previous requisition meant the ratification of the one previously directed to him by the court, "in order that the sums which he owed from that time to Mr. Manuel Sixto should not be delivered by him except to the court in order to deposit the same in the royal treasury." This order was duly served on Sarria on February 5, 1895.

On November 29, 1895, the audiencia heard the appeal, and, reversing the order of August 30, declared the order of June 2, 1894, in full force, whereby the cautionary entry was ordered to be made by the registrar of property, and the notification

ordered to Sarria to hold the payments on the mortgage or pay the same into the treasury, to abide the order of the court.

The registrar refused to comply, assigning as a reason that the encumbrance had been assigned to third parties and that the mortgage law did not justify such an order. Subsequent proceedings resulted in the final decree of the military court deciding the merits of the controversy in favor of Sixto. The decision of November 29, 1895, was also notified to Sarria, and on May 4, 1896, the entry of the court discloses:

" On May 4, 1896, appeared Mr. Laureano Sarria y Gonzalez and stated: that, having received notice that the installment of the mortgage had been transferred to Mr. Antonio Roig, who has recorded said transfer in the registry of property, and supposing that he will proceed to collect the same judicially, as he did the previous installment, he is unable to accept the notification, and he will appear before the audiencia in the premises."

Over the objection of the plaintiff in error, Sarria was permitted to testify that he paid the installment to Roig by order of the audienca. But the plaintiff in error was not a party to such proceeding, if it had been legally proved, and of course could not be concluded by it. On being notified that the order of June 2, 1894, was in full force, requiring him to hold the funds, while Sarria says he is unable to accept the notification, he declares " he will appear before the audiencia in the premises." Instead of so doing, unless the appearance in the Roig case can be so considered, he made application in the court of first instance for a release of the deposited installment in order to pay it to Roig, and that court made the order, although it had been notified of the decision of the audiencia of November 29, 1895. This order could have no effect on the rights of the plaintiff in error, nor can it protect Sarria, who acted in the face of knowledge of the decision of the higher court instead of appearing in that court at the suit of Sixto, and having the rights of Roig and the contesting heirs determined. We conclude that the plaintiff in error had the right to recover his share of the third and fourth installments,

notwithstanding the alleged transfers and payments to Roig, and the alleged decree of the audiencia in the proceeding to which Sixto was not a party.

   *For error in the court's charge as to the second, third and fourth installments, the judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.*