# ADOLFO SIXTO

*v.*

# MARÍA MELENDEZ MALDONADO.

---

San Juan, Equity, No. 159.

1. Persons declared heirs *ab intestato* of another cannot, within five years thereafter, dispose of the real estate of decedent, except subject to the claims of other persons claiming also to be heirs.

2. Purchasers during that time take with notice, and this without regard to the good faith of the transaction.

3. A cautionary notice on the books of the registrar of property is notice to subsequent purchasers, although canceled of record, if the act of cancelation has been appealed from and is subsequently held void.

4. Sections 1266 of the Civil Code and 36 and 37 of the mortgage law have no application to an action brought by a person claiming as heir *ab intestato* of another, although such an action may involve the decision of the invalidity of a conveyance for lack of consideration and as simulated.

5. The remedy in such a case, involving, as it does, the correction of an entry on the books of the registry of property, is in the Federal court, on its equity side.

6. Section 1261 of the Civil Code of Porto Rico is not binding on the United States district court.

7. Persons through whom title to land has passed, but having no present interest therein, and who are not to be affected by the decree, are not necessary parties.

8. When the bill specifically waives an answer under oath, but the answer

is nevertheless sworn to, two witnesses, or one and corroborative evidence, are not necessary to overcome the allegations of the latter.

Opinion filed March 21, 1907.

---

*N. B. K. Pettingill, Esq.,* solicitor for plaintiff.

*Joseph Anderson, Jr.,* solicitor for defendant.

RODEY, Judge, delivered the following opinion:

The bill in this case was filed by the complainant in September, 1902, to have the court affirm his title as heir *ab intestato* of his father, Manuel Sixto, to an undivided half interest in a house and lot situated in the town of Isabela Segunda, in the island of Vieques, off the east coast of Porto Rico, and to cause the same to be partitioned and his portion set off to him, or, in case of its proving to be impossible to do that, for the appraisement and sale of the premises in the usual manner, and for other relief as might be necessary.

A great deal of dilatory and other pleading in the cause has taken place and a whole lot of unnecessary delay, but most of it probably due to other litigation, about other phases of the same subject-matter, has been indulged in since the filing of the bill. The cause finally came to trial before the court on the 25th day of February, 1907, at which time both sides were properly represented, exhibits introduced and evidence taken, which was afterwards transcribed from the stenographer's notes, and the cause is now before the court for final findings and decision on the merits. An understanding of the situation necessitates the making of the following

Sixto v. Maldonado.

Statement.

For many years previous to November 27, 1892, there had lived on said island of Vieques a man named Manuel Sixto, who died intestate on that date without forced heirs, leaving some property and two natural children by different mothers, one of whom, named Adolfo Sixto, is the complainant, and the other is named María Belen Sixto, both of whom were probably of legal age at the time of his death. The first mentioned, the boy, at the time of the death, was, as it appears, absent and living in the island of St. Thomas.

Shortly after the father's death, the daughter, María Belen Sixto, who was then, and ever since has been, living at said Isabela Segunda with this respondent, who is her mother, applied to the proper court at Humacao in Porto Rico, without, as it seems, mentioning the existence of complainant, her half-brother, although she knew all about him (as she had written him after their father's death), and, on November 21, 1893, had herself declared heir *ab intestato* of her said father, but the decree so declaring her heir stated, as it seems it had to do under the law, that it was done "without prejudice to others." Four days later, on November 25, 1893, she took possession of all the property, lands, chattels, and cash, including the house and lot in question, belonging to the deceased, that had been in possession of an administrator theretofore appointed. The previous day, November 24, 1893, this half-brother (the complainant here) came into the same court and made application to be declared heir also, jointly with his said half-sister, but as to this she strenuously opposed him. While he was prosecuting one phase of this claim, and on June 4, 1894, he had a cautionary order of court issued to the registrar of property of that dis-

trict (although it appears that this was not necessary under the law), to prevent transfers of deceased's property against his rights. This cautionary notice was filed with the registrar eight days later, on June 12, 1894. The court denied his application to be declared an heir, on some technical ground, holding that he ought to bring some sort of a "contentious" suit in the premises, rather than a direct application. He took an appeal from this holding (although he afterwards, it seems, began the other suit), and prayed that the appeal be considered also as a supersedeas, to hold the warning notice as to the property in force. The court granted the main appeal, but denied the supersedeas effect of it, whereupon he also appealed from that denial. The main bone of contention at this stage of the controversy was a debt due the father's estate, of some 16,000 pesos from one Laureano Sarria.

It is unnecessary to detail the history of the litigation that occurred between these natural children and Sarria within the following few years over this heirship and property, as it is not ended even yet as to Sarria, but it was a hard-fought contest comprised in many protests, suits, appeals, remandings, orders on contempt, etc., in this and the local courts. One phase of it, a suit by this same complainant against Sarria, was tried in this court in November, 1902 (1 Porto Rico Fed. Rep. 181), and thereafter carried to the Supreme Court of the United States (196 U. S. 175, 49 L. ed. 436, 25 Sup. Ct. Rep. 186), where will be found a statement and opinion by Mr. Justice Day of that court, giving concisely, virtually the whole history of the legal battle of these two illegitimate children over their father's estate, and settling various points of Porto Rican, and other law in the matter, all of which is, of course, when applicable, binding here.

### Sixto v. Maldonado.

Adolfo Sixto, in the appellate tribunals of the island, suc-ceeded in having himself declared an equal heir with the said María Belen Sixto, and entitled to, and owner, since the date of his father's death, of an undivided moiety of the estate with his said half-sister, and also succeeded in having the action of the lower local tribunal at Humacao, in canceling and suspend-ing his cautionary notice on the registry as aforesaid, de-clared to be null and void, and establishing the effect of said cautionary or *lis pendens* notice, whatever it may be called, certainly as to the proceeding with Sarria, from the date of its issue in the first instance.

After María Belen Sixto had thus taken possession of all of the estate of the deceased, she continued the contest in the courts against this complainant's right to any share thereof, and finally, on August 30, 1894, managed to get his cautionary notice set aside, and the same was canceled on the registry on September 3d of that year, where it had remained for nearly three months, but complainant on that same day took an ap-peal from the order canceling it, which, as indicated, he after-wards won. However, some eight days thereafter, on Septem-ber 11, 1894, the said María Belen Sixto deeded the whole of this house and lot to one Genaro Morenglan y Negron, a neigh-bor, for, as it is alleged, the sum of 3,000 pesos of the then cur-rent money. There was some irregularity about the deed, so they made an additional instrument on September 19th cor-recting it. This deed was recorded in the proper registry office a little over a month thereafter, on October 24, 1894. Five months later, on February 19, 1895, this grantee, Genaro Morenglan y Negron, after having occupied the house a short time, deeded the property to the respondent here, María Melen-dez Maldonado, who, as stated, is the mother of the said María

Belen Sixto, and the same, so far as the record shows, stands in her name at the present time.

### Argument and Findings of Fact and Law.

The bill alleges that these two transfers are mere pretended conveyances, made without consideration, in fraud of complainant's rights, and with full notice in the premises. It further alleges that the respondent was, at the time she is alleged to have bought this property, a person entirely without money or property, and that no valuable consideration was paid for either of said conveyances, and that, as to the half interest of this complainant in said property, the said transactions in fact constituted no more than a voluntary gift from the said María Belen Sixto to her said mother, and hence prays, as above set out, for an affirmance of the half interest of the title to complainant and a division of the property. The bill further alleges that the value of said real estate is more than the sum of $1,000, and that the complainant and respondent are seised of the same in fee simple as tenants in common, each owning an undivided half thereof. The bill specifically waives an answer under oath.

The complainant introduced in evidence, first, a duly authenticated deed showing the purchase of the property many years ago by the late Manuel Sixto, and next introduced a certified copy of the final judgment of the district court of San Juan, Porto Rico, recognizing the right of complainant as a joint heir with his said half-sister, María Belen Sixto, to the estate of Manuel Sixto, their father. The respondent introduced the deeds evidencing the two conveyances above referred to, under which she claims title, and also considerable oral evi-

Sixto v. Maldonado.

dence intended to support her claim that she purchased the same for value and in good faith. The complainant then introduced in rebuttal certified copies of entries from the registry of property, showing that the claim of the complainant as heir of his father and the pendency of the suit in that behalf, to enforce that claim, were duly annotated in said registry several months prior to the conveyance from María Belen Sixto to the said Genaro Morenglan y Negron, even though attempted to be canceled, as aforesaid; and also introduced the judgment of the audiencia on appeal, under date of November 29, 1895, holding that said annotation remained valid and in force, and that the order of the lower court attempting to cancel the same was null and void.

Quite a considerable amount of oral testimony was introduced, intended to show that this purchase of this property was made in good faith and for value, but all of this testimony that was at all material was by the mother and daughter and this man Morenglan. The other oral evidence was either immaterial or of a character not entitled to any weight. The court saw the witnesses, and states that the said María Belen Sixto and the respondent, her mother, as well as this man Morenglan, are rather intelligent mulatto people of different shades of color. They were cross-examined by counsel and by the court as to their knowledge of complainant's rights in the premises, and we are free to say that, while there is nothing glaringly inconsistent about their stories, on the whole, they appear to the court as quite improbable. This we say in spite of the sympathy the court could not help feeling for the old woman, as it appeared from the evidence that both she and the daughter, at present, at least, work for a living at sewing, housekeeping, washing, and ironing for others. Neither of them has ever lived in the house in question, but the old lady now rents it, having also another

house under her control, which, she claims, belongs to a grandchild. This man Morenglan claims to be a mechanic engaged in the erection and management of sugar machinery and plants, and, from his own evidence, gets pretty good wages.

But, no matter what conclusion we might come to on the evidence, as set out in the exhibits and the testimony submitted, we feel that the Supreme Court of the United States has settled this matter. In the case above referred to, construing a portion of the Code of Porto Rico, it is held (p. 186): "It seems to us manifest that the effect of these proceedings [that is, the proceedings for having persons declared to be heirs under Porto Rican law] is to permit the heir *ab intestato,* after such final decision, to receive and collect the estate. It may be that others will establish an interest in the property for which the heir will have to respond, and it is specially provided that, for the purpose of transfer, property shall not be deemed clear until after five years have elapsed." This statement of the Supreme Court of the United States has particular reference to § 23 of the mortgage law, as set out in a previous page of that opinion.

Now this commands and obliges us here to hold that, although María Belen Sixto was duly declared an heir *ab intestato* of her father, and took possession of his estate, still she had no right, save subject to the rights of other heirs, if any, to transfer any of his real estate until after five years from the date she was so declared to be an heir, and all purchasers from her were bound to take notice of this limitation affecting her power. Her deed to Morenglan and the deed from the latter to her mother were both made within a little over a year after she had been declared an heir, and, as this holding of the Supreme Court of the United States is binding upon us, we must and do hold that

María Belen Sixto, as to a one-half interest thereof, made the transfer in question without authority of law, and Morenglan bought the same, whether in good faith or otherwise, and so did the respondent buy it, whether in good faith or otherwise, charged with legal notice of this complainant's rights, and subject to the same, and took no title as against him in the premises.

The Supreme Court makes several other statements, holdings, and findings in that opinion, among which are (pp. 187, 188): "It is evident from a letter written to him [Adolfo Sixto, complainant here] on November 11, 1892, by María Belen [meaning said María Belen Sixto], that she recognized the plaintiff in error as her brother, for in this letter she announces the death of 'our beloved father,' subscribed herself as 'sister,' and requests Sixto to come over to Vieques at once, as his presence was necessary in order to collect money coming from the estate." This of course shows that María Belen Sixto up to that time had considered complainant her brother, and considering the bitter contest that shortly afterwards arose and that was going on at the time of the making of this deed, and in the litigation as to the heirship, and as to the Sarria debt, it is unbelievable that the respondent, her mother, living in the same house with her, as well as this neighbor, Morenglan, and in fact the whole community where they lived in Vieques, did not know about complainant's claims.

So therefore, even though it is probably unnecessary, we feel fully authorized to find, and do find, that the respondent and Morenglan and María Belen Sixto had full knowledge in the premises concerning the complainant's rights at all times mentioned in the bill of complaint. And further, on the evidence, we feel warranted in holding, and do hold, that the said Genaro Morenglan y Negron, when he was about to purchase the prop-

Sixto v. Maldonado.

erty, if he went to the registry office, as he says he did, found there the cautionary notice as to this complainant's rights in the premises, and the courts of the island as well as the Supreme Court of the United States having afterwards found that the alleged cancelation of that cautionary notice was null and void, all intending purchasers of the property were, and must, under the law, be charged with notice, and must take the consequences if they purchase property from an heir *ab intestato* within five years. It is therefore manifest that, under the law, Morenglan and this respondent were bound without any cautionary notice having been on the record; but we feel that the evidence fully warrants us in holding, and we therefore do hold, that the Morenglan transaction and the retransfer to the old lady were merely simulated, and we do not believe that any money ever in fact passed between the parties in good faith therefor.

Counsel for respondent makes several points in his brief, which, although the same may be unnecessary, courtesy, perhaps, requires us now to consider. He contends that the cause should be dismissed because the court has no jurisdiction, in that the amount involved is less than the sum of $1,000, and claims in this behalf that the proof shows the value of the property to be not to exceed 3,000 pesos, which would make in gold $1,800, and one-half of which would be $900, or $100 less than the minimum fixed to give this court jurisdiction under the amendment to the Foraker act. Sec. 3, act Congress, March 2, 1901 (31 Stat. at L. 953, chap. 812). As to this, we reply that the bill alleges jurisdictional value, and the answer does not traverse the allegation, and further, that the whole property is in question under the pleadings, even though this complainant is entitled to but one half of it, the respondent

claims the whole of it. And, at any rate, by the matter in dispute, as that phrase is used in the statutes conferring jurisdiction on United States courts, is meant the subject of litigation, the matter upon which the action is brought and issue is joined, and in relation to which, if the issue be one of fact, testimony is taken. This was, we think, fairly held in Smith v. Adams, 130 U. S. 167, 32 L. ed. 895, 9 Sup. Ct. Rep. 566. See also Put-in-Bay Waterworks Light & R. Co. v. Ryan, 181 U. S. 409, 45 L. ed. 927, 21 Sup. Ct. Rep. 709.

It is further contended that the action has prescribed, under § 1266 of the present Code of Civil Procedure of Porto Rico, which provides that "the action asking rescission must be brought within four years." That this section refers to any kind of a contract which it is desired to have rescinded or set aside, and that, under articles 36 and 37 of the mortgage law, a limit of one year is put upon the bringing of actions to set aside a fraudulent conveyance. We have heretofore held in the case of Parés v. Reynes, recently decided in this court, ante, 402, that § 1266 does not apply in this sort of a case, and we now hold that §§ 36 and 37 of the mortgage law do not apply because, under the holding of the Supreme Court, supra, no one can buy property from an heir *ab intestato* with assurance of clear title thereto until after five years from the date such person was so decided to be an heir. In this case, complainant simply asserts that he is the owner of a one-half interest in fee to the property in question as heir of his father, and he asks for a division of the property, and that the old lady, who now claims to be sole owner, be shut out from claiming complainant's half.

Counsel further contends that the action should have been one at law, and that the court is without jurisdiction in equity.

## Sixto v. Maldonado.

In the Reynes Case, supra, we held the contrary doctrine, and it is *stare decisis* in this sort of a case. Under the mortgage law of Porto Rico, where a person has wrongfully secured the title to be inscribed in his own name in the registry, it is seldom that an action at law is an adequate remedy for the real owner, because, whenever judgment at law is recovered in this court, it is unavailing without a subsequent action to correct the record in the registry, and for that reason it is manifest that in most cases a suit in equity, where the whole matter can be settled, is the proper remedy. The provision of § 1261 of the local Code that, "the action for rescission is a subsidiary one; it may be enforced only when the person injured has no other legal remedy to obtain reparation for the injury," binds only the local courts, and cannot affect the chancery jurisdiction here.

The point is also made that there is a lack of parties defendant, in that Genaro Morenglan y Negron is not made a party defendant, although the title passed through him. As to this, we reply that while we are of opinion it might have been better if he were a party, still he was a witness in the case and knows all about it, and having no interest in the property at the present time, because he conveyed the same to the old lady, he is not, in our opinion, a necessary party to the suit.

The inscription under the decree herein, in the registry, of a half interest in the complainant to the property, and a division of the property thereafter under chancery procedure, will be all the relief that the complainant requires. We therefore find:

That the court has full and complete jurisdiction in the premises.

That complainant has proved every material allegation of his bill, including the allegations of fraud and simulated sale.

That no consideration in good faith ever passed from the re-

II. Porto Rico.—30.

spondent to the witness Genaro Morenglan. y Negron or from the latter to the said María Belen Sixto for the property in question.

That no accounting will be had between the parties, as the same is not properly requested in the bill, and the complainant is guilty of laches in that behalf, and therefore, in the opinion of the court, he is not entitled thereto.

That the complainant is in law the owner in fee of an undivided one-half interest in and to the property described in the bill, and that the same should be registered in his name, and all these registrations in conflict with such intended registration of such half interest in complainant should be canceled.

That a sworn answer was not required by the bill, but the same was specifically waived by its terms, and that, therefore, the filing of a sworn answer by respondent did not require that the same be overcome by two witnesses or by one witness and corroborative evidence; but we find that the record evidence introduced and the admissions of the pleadings, as well as the whole evidence in the case, are in law equal to the proof required, and the law absolutely fixes the rights of the parties in the premises.

Therefore a proper decree in the premises will be prepared and entered of record, as well as all proper orders to the registrar of property and for the purpose of appointing commissioners to ascertain whether or not the property can be divided, and, if the report shall be that it cannot be so divided without manifest injury or prejudice to the said parties, then the same will be sold under the order of the court and the proceeds divided among the parties according to their respective rights and interests, as herein ascertained. The cause will be retained for

all these purposes. Costs will be given against the respondent, and it is so ordered, save that the costs for the stenographer's transcript will be equally divided between the parties.