## ADOLFO SIXTO, Plff.,

*v.*

## JOSÉ BENITEZ DIAZ, Dft.

---

San Juan, Equity, No. 314.

Statement: M died intestate in 1892, leaving, as part of his estate, a mortgage; in 1892 B was declared his heir; in 1894 A sued B, claiming also to be an heir, and caused a cautionary notice of the suit to be entered in the registry of property; judgment was for B, and the notice was ordered canceled, which was done; A appealed, but did not have the appeal noted in the registry; the mortgage was discharged of record in 1896 by payments made by M's vendee, S, and the lien discharged of record, leaving the title clear in S, who, in 1903, sold to J, defendant; the appellate court reversed the judgment against A, and declared him an heir of M; and in 1905 A filed this suit against J to foreclose the mortgage (one half). Held:

1. That J, being an innocent purchaser for value from S, who had, according to the books of the registry, a clear title when he sold, is the owner, free from the lien of the mortgage.

2. That A was negligent in not noting his appeal in the registry.

3. That A having, in another suit, recovered judgment against S for the amount of his claim, it would be inequitable to allow him to recover a second time on the same demand.

Opinion filed November 8, 1907.

---

*Mr. N. B. K. Pettingill,* attorney for plaintiff.

*Messrs. Diaz, Guerra,* and *Coll y Cuchi,* attorneys for defendant.

RODEY, Judge, delivered the following opinion:

This is a bill in equity to foreclose an alleged mortgage lien upon a piece of property or plantation known as "Monte Santo," containing some 430 cuerdas of land, situated in the island of Vieques, in Porto Rico. It is another phase of a now somewhat famous case in this and the insular courts, which has, at various times, occupied the attention of such tribunals for more than fifteen years last past,—one branch of it having been carried to the Supreme Court of the United States (Sixto v. Sarria, 196 U. S. 175, 49 L. ed. 436, 25 Sup. Ct. Rep. 186), where Mr. Justice Day, of that court, has set out in the opinion a statement of the essential parts of the controversy. We had occasion to consider another portion of it between this same complainant and María Melendez Maldonado, the mother of his half sister (Equity, No. 159), wherein we filed a somewhat extensive statement of facts and made various findings of law. (See opinion in files.)

Manuel Sixto died in November, 1892, at said Vieques, leaving, as it transpired, as his only heirs at law, two natural

III. PORTO RICO—14.

children by different mothers,—the complainant and his half sister, María Belen Sixto.

Some six months before his death, said Manuel Sixto had sold this "Monte Santo" ranch or plantation to one Laureano Sarria for 16,000 pesos, Porto Rican currency, payable with interest in instalments of 4,000 pesos per annum, running through 1893, 1894, 1895, 1896, inclusive. It seems that there was little or nothing paid of the purchase price by Sarria at the time of the making of the deed, and he therefore gave a mortgage back to the said Manuel Sixto to secure the same in payments as aforesaid, both of which instruments, or perhaps the single instrument, embracing both contracts, whichever it may have been, was thereafter duly recorded. This particular debt, the mortgage, and the land included therein, are the matters in controversy in this particular phase of the litigation between these parties.

Although she knew all about the existence of this half brother of hers, the daughter, María Belen Sixto, shortly after the father's death, went into the local courts and had herself declared heir *ab intestato* of her said father; but the court in the order made the declaration specifically, "without prejudice to third parties." This complainant shortly thereafter proceeded in the same court in an effort to have himself declared, jointly with her, heir *ab intestato* of his said father. His application was denied on the ground that he must bring a contentious suit directly against his said half sister. He appealed from this denial, but afterwards abandoned it, and shortly thereafter, in April, 1894, filed the contentious suit suggested by the court. This half sister, on April 26, 1904, at a time when she was properly in possession of her father's estate and empowered to col-

lect its debts (see Sixto v. Sarria, supra), collected and canceled of record one half of this Sarria mortgage debt.

In June, 1894, the complainant here caused a cautionary notice under the mortgage law of Porto Rico to be entered in the proper registry of property to protect his rights in this particular "Monte Santo" ranch or plantation. It appears that the complainant lost his suit in the court of original jurisdiction, and, on motion made therein by his said half sister, an order was issued to the registrar of property, canceling the cautionary notice theretofore filed against the property in question. Complainant immediately, or practically so, took an appeal from the action of the court as to his application to be declared an heir, and as to the action of the court in canceling the cautionary notice, but unfortunately omitted to cause any notice of this appeal to be noted in the registry of property at any time thereafter up to the present time. It is not claimed, nor was it shown in the cause, that this respondent, who claims to be an innocent purchaser for value, without notice of complainant's alleged rights, ever had any actual knowledge of the appeal; on the contrary, the contention being that he is in law charged with constructive notice thereof from the mere fact that the cautionary notice showed the commencement of a suit, and that the cancelation thereof did not necessarily indicate that the suit was ended, and that respondent was put upon inquiry as to what became of the suit thereafter, and bought the property at his peril.

In September, 1893, the half sister sold and duly assigned the remaining two payments due upon this mortgage, amounting to some 8,000 pesos and interest, to one Antonio Roig, and the latter promptly notified Sarria, the maker, of his purchase of the same, and afterwards sued him for one of the payments.

It appears further that Sarria thereafter paid both these remaining payments to Roig, and secured, in May, 1896, from him as the assignee thereof, a complete acknowledgment of payment, and, it is claimed, consequent cancelation of the mortgage, all of which was duly entered of record in said registry office, and this apparently left the property standing free in Sarria's name.

Several years thereafter, in September, 1899, the higher Spanish court in Porto Rico reversed the lower court as to its refusal to declare complainant an heir *ab intestato* to his father's estate equally with his sister, and also reversed it as to its action in canceling the cautionary notice referred to. Complainant, however, so far as appears, never caused this fact to be noted of record in the registry, or, so far as the evidence shows, caused any notice of it to be brought to the respondent. Some four years thereafter, in 1903, Sarria and wife, being apparently, and according to the records during all that time, the owners of the property in question, free from all encumbrances, sold the same with other property to this respondent for the sum of $30,000, American gold.

This suit was filed in June, 1905, more than two years after this latter transfer. The respondent in his answer sets up the fact that he is an innocent purchaser for value, without notice of any of the equities of the complainant, if any exist, and sets out a memorandum of the entries in the registry showing the several deeds, mortgages, assignments, cautionary notice, and the cancelation thereof, which latter is absolute in form and gives no intimation of any appeal. The result of these entries is to apparently vest the complete fee-simple title in Sarria immediately upon the payment of the balance due on the mortgage to Roig in May, 1896, some seven years before respondent purchased it.

On the trial, records and deeds were introduced by both sides, which fully prove the allegations as to these several transfers and the statements herein made, but no evidence was introduced in the cause to show any actual notice on the part of the respondent of this appeal or of the heirship or even the existence of the complainant.  It will be noticed that the deed by which this respondent purchased the land in question is dated in 1903, nearly ten years after the date upon which his said half sister was declared an heir *ab intestato* of their father, and nearly double the. time (five years) which the Supreme Court of the United States in Sixto v. Sarria, 196 U. S. 175, 49 L. ed. 436, 25 Sup. Ct. Rep. 186, held to be the time within which realty could be purchased with safety from an heir *ab intestato* who had been so declared "without prejudice to the rights of third parties."

Counsel for complainant, in the brief he has filed for our consideration, admits that there is no dispute as to the facts in the cause, all being shown by the pleadings and the record evidence, and admits that the rights of the parties are to be passed upon in the light of the admitted fact that respondent had constructive and actual notice of the contents of the registry, and depended upon it when he made the purchase.  Counsel for complainant then proceeds to argue that "where an entry in the registry puts a purchaser on notice that a suit is pending which involves rights in, or a lien upon, the property he is about to purchase, that he purchases the same subject to the result of that suit;" and he cites Tilton v. Cofield, 93 U. S. 168, 23 L. ed. 859, and several other cases in support of the doctrine. It may be admitted that counsel is right as to this doctrine obtaining in the several states of the Union, but we do not think that we are now at liberty to hold with him in that regard as to

Porto Rico, even did our judgment so incline. The learned counsel himself signally failed before the Supreme Court of the United States in the now well known case of Romeu v. Todd, 206 U. S. 358, 51 L. ed. 1093, 27 Sup. Ct. Rep. 724, to sustain the proposition that the old and well-established chancery rule of *lis pendens* applied in this court as against the force of the mortgage law of the island. In that case Mr. Justice White made an extensive examination into the status of Porto Rican law under the organic act, as to the registration of property, and has, we think, finally settled a number of important disputed questions affecting the subject and the people of the island.

As we see it, the opinion in that case does not leave the course we must pursue on the facts here open to the resolving of any doubts, or to conjecture of any kind. If that opinion establishes anything, it settles the law at present in Porto Rico to be that the mortgage law as to property rights is ordinarily supreme, and that, where the registry shows title, there the law presumes it to be,—certainly as to innocent third parties or purchasers for value without notice. It would not be profitable to quote small portions of the opinion in question, because a reading of the whole of it is necessary to a clear understanding of its import and the holding here.

The court of first instance of Humacao, from which the cautionary notice issued to the registrar, is the court from which the cancelation shortly thereafter also issued, and the language of the latter order is ". . . . that the cautionary notice is totally canceled. . . ." These instruments were both duly acknowledged and solemn orders of a court of competent jurisdiction under the mortgage law.

We think that complainant was negligent when he failed to

request the court, on taking his appeal from its action in canceling his cautionary notice, to cause a notice of the appeal to be also filed in the registry, or, in case the court refused so to do, in failing to notify the registrar himself by written notice or letter. The registry in this case, in our opinion, under the mortgage law, showed complete, unencumbered fee-simple title in Laureano Sarria at the date of the purchase by respondent, and, in our opinion, under the law and the authority of Romeu v. Todd, supra, respondent had full right to purchase the same as he did.

There are other considerations in this cause that would render a recovery here inequitable. In the first place, it may be that complainant has waived all rights against respondent Diaz. Instead of foreclosing this mortgage in the first instance, if mortgage it is, he sued Sarria in this court previous to November, 1902, for his half of the money due on this same alleged mortgage from Sarria to his father's estate, and carried that case to the Supreme Court of the United States (196 U. S. 175, supra), where he recovered, and, as we see it, where all his cause of action perhaps merged. Furthermore, since that cause was remanded here, complainant has been pursuing Sarria for the satisfaction of the judgment in extensive supplemental proceedings which are still pending.

It is not at all certain but what, when complainant thus pursued Sarria alone, he should be held to have waived all right, if any he ever had, to foreclose this alleged mortgage against this respondent, as he is here attempting to do, and this view ought to have greater force after his suit against Sarria had thus resulted in a judgment in a court of last resort, as it has done. "The weight of authority in the United States shows that whatever may be a cause of action, will, if recovered up-

Sixto v. Diaz.

on, merge into the judgment or decree." 1 Freeman, Judgm.
§ 216, and cases cited.

We think, therefore, that the respondent took good title by
his deed from Sarria under the condition the registry was in,
and the bill should therefore be dismissed with costs, and it is
so ordered.