# ROMEU v. TODD.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR
THE DISTRICT OF PORTO RICO.

No. 269.    Argued April 19, 1907.—Decided May 27, 1907.

All the local law of Porto Rico is within the legislative control of Congress,
and under § 8 of the Foraker Act, 31 Stat. 79, the local law remains in
force until altered, amended or repealed by Congress or in the manner
provided in the act, and cannot be disregarded by the courts.

The local statutory law of real property in Porto Rico, requiring the giving
and recording of a cautionary notice of a pending suit in order to affect
third parties dealing with the recorded owner, not having been altered,
amended or repealed, applies to a suit brought on the equity side of the
District Court of the United States for Porto Rico, and notwithstanding
the provisions of § 34 of the Foraker Act, constructive notice of the
pendency of such an action is not, in the absence of the cautionary notice
required by the local law, operative against innocent purchasers.

The District Court of the United States is not a constitutional court of the
United States; its authority emanates wholly from Congress under the
sanction of its power to govern territory occupying the relation that
Porto Rico does to the United States.

THE facts are stated in the opinion.

*Mr. Frederick L. Cornwell,* for appellant, submitted:

Under the laws of Porto Rico a conveyance of real property
can neither be attacked nor rescinded where such property is
legally in the hands of a third party who has not acted in bad
faith. Civil Code, Rev. Stat., 1902, § 1262.

A *bona fide* possessor is deemed to be a person who is not
aware that there exists in his title or the manner of acquiring
it, any flaw invalidating the same." Civil Code, Rev. Stat., ed.
1902, sec. 436.

As appellant purchased the land in question after making
due and diligent inquiry in the proper office as to the conditions
of the title thereto, acquiring the title and possession thereof
in good faith and in a legal manner, fraud, cheat or deceit

being absent from the transaction, he having no knowledge of any flaw in his title, and recorded the same according to law, his title and possession are unassailable. Mortgage Law, § 36.

Good faith is always presumed, and any person averring bad faith on the part of the possessor is bound to prove the same. Civil Code, Rev. Stat., ed. 1902, § 437.

The possessor who believes himself owner has in his favor the legal presumption that he possesses under a just title, and he cannot be compelled to show the same. Civil Code, Rev. Stat., ed. 1902, § 450.

Under these provisions the title of the appellant is unassailable, there being no inscription of the *lis pendens* and he being a purchaser in good faith.

In Porto Rico the registry of the property is the only office for the information of prospective purchasers of land as to conditions of title thereto, and one who purchases land in litigation from one of the parties to the suit acquires a good title if upon due search being made in said registry nothing is found that will affect the title to be acquired. Mortgage Law, article 42. Execution of the Mortgage Law, article 91; 1 Galindo & Escosura, Commentaries on the Mortgage Legislation of Spain, 102.

The equitable doctrine of *lis pendens* being inapplicable to the case at bar, the United States District Court should have decided as the insular court would do in the premises.

Federal courts are bound to decide precisely as the state courts ought to do, where their decision will affect titles to real property. *Hinde* v. *Vattier,* 5 Pet. 398; 8 id. 170; *Union Pacific Ry. Co.* v. *Reed,* 80 Fed. Rep. 234, 239; *Hoge* v. *Magnes,* 85 Fed. Rep. 355–357.

The United States courts also follow the decisions of the highest court of a State where they settle rules of law relating to real property. *Myers* v. *Reed,* 17 Fed. Rep. 404; *O'Connell* v. *Reed,* 5 C. C. A. 586; *Belding* v. *Hebard,* 43 C. C. A. 296–308.

*Mr. N. B. K. Pettingill,* for appellee, submitted:

If a litigation pending in any court of the United States

within the States had taken the same course as that herein involved, and the same question now brought before the court on this appeal had come from a Federal court in any one of the States, there can be no question how it would be decided, because there has been a uniform line of decisions as to the application of the equitable doctrine of *lis pendens*, which is entirely distinct from the statutory *lis pendens* provided for in many States in suits at law. See Pomeroy's Equity Jurisprudence, §§ 632 and 633; *Murray* v. *Ballou*, 1 Johns. Ch. 566; *Union Trust Co.* v. *Southern &c. Co.*, 130 U. S. 565; *Mellen* v. *Moline Iron Works*, 131 U. S. 352; *Murray* v. *Lylburn*, 2 Johns. Ch. 441; *County of Warren* v. *Marcy*, 97 U. S. 105; *Miller* v. *Sherry*, 2 Wall. 237; *Terrell* v. *Allison*, 21 Wall. 289; *Lacassagne* v. *Chapuis*, 144 U. S. 119.

Congress intended to grant full equity powers to the United States court established in Porto Rico; otherwise it could not have jurisdiction of all cases cognizant in the Circuit Courts, nor could it proceed therein in the same manner as a Circuit Court. This provision has always been by that court interpreted as such a grant of power, and further, as a requirement to maintain the distinction between the law and equity sides of the court and the pleading and procedure to be followed on each side, and that interpretation has had the tacit approval of this court, by its consideration and decision of cases purely equitable in their nature, in *Rodriguez* v. *Vivoni*, 201 U. S. 371, and *Garrozi* v. *Dastas*, 204 U. S. 64.

While the engrafting of an equitable jurisdiction on the laws of Porto Rico constituted a departure from the system of law formerly prevailing there, it does not follow that such departure was not a beneficient exercise of the power of the new sovereign. In any event such was the intention of the Congress and an evidence of its desire to give to the new territory, by bestowing upon it the dual system of courts existing in the States, all the advantages for the most perfect administration of justice. *Noonan* v. *Braley*, 2 Black, 499; *Kirby* v. *Lake Shore R. R. Co.*, 120 U. S. 130.

The main contention of appellant is that even courts of equity of the United States in a State are bound by the statutory provisions for recording a *lis pendens* when such provision has been enacted in such State. But in this contention counsel fail to distinguish between cases at law and cases in equity, and an investigation of the cases cited will show that they are cases upon the law side of the court. *Vance* v. *Wesley,* 85 Fed. Rep. 157 and *Smith* v. *Gale,* 144 U. S. 509, discussed; *Bondurant* v. *Watson,* 103 U. S. 281, distinguished.

Mr. Justice White delivered the opinion of the court.

Robert H. Todd obtained a judgment in the United States Provisional Court of Porto Rico in the year 1900 for the sum of $2,946.05 against Pedro and Juan Agostini, and execution to enforce the same was returned *nulla bona.* Thereupon Todd, in 1901, filed a bill in equity in the United States court for the District of Porto Rico against the judgment debtors (the two Agostinis) and one Ana Merle for the purpose of enforcing the judgment upon certain real property of which Ana Merle stood upon the public records as the owner. The ground was that the property had been paid for with the money of the Agostinis and was hence liable to be applied to their debts. Without further detail it is only necessary to say that the court decreed that a certain parcel of land described in the bill had been purchased by Ana Merle with funds belonging to Pedro Agostini, and said Agostini "was the owner of the equitable and beneficial title of the same." And it was ordered that to pay the indebtedness to Todd, the property, with the improvements thereon, be sold at public sale by a commissioner appointed for that purpose. Whilst this suit was pending, before decree, the piece of real estate embraced by the decree was sold by Merle to Higinio Romeu, the plaintiff in error. The present bill was filed on behalf of Romeu against Todd to enjoin the sale of this piece of property. The bill alleged the bringing of the Todd suit, the purchase of Romeu pending such suit, the

decree rendered therein as above stated and the fact that the decree was about to be executed. It was averred that the purchase by Romeu had been made for an adequate consideration, with the utmost good faith and without knowledge of the pendency of the Todd suit; that the property since it was bought by Romeu had been largely improved by him, and that, as no cautionary notice concerning the Todd suit, as authorized and required by the law of Porto Rico, had been put upon the records, the property acquired by Romeu under the circumstances alleged was not subject, in Romeu's hands, to the Todd decree. A temporary restraining order was allowed. The bill was demurred to on two grounds—first, that it stated no cause of action, and second that, admitting all its averments to be true, as the property was bought whilst the equity cause was pending, the purchaser took subject to the *lis pendens*. The demurrer was sustained, and, Romeu electing not to plead further, a final decree was made dismissing the bill.

The court below, in its opinion, assumed that under the local law a third party in good faith purchasing from or dealing with the registered owner of real estate, without notice in fact of the existence of a pending suit concerning the title to property, was not to be treated by operation of law as constructively notified of the pendency of the suit, unless the cautionary notice, which the law of Porto Rico required to be put upon the record, was given. But whilst so declaring, it was nevertheless decided that the local rule of real property referred to was not controlling in this case. This ruling was based upon the conception that the constructive notice resulting from a suit in equity in the United States court for Porto Rico was to be imputed, irrespective of the positive requirements of the local law. The court said:

"As this is a proceeding on the equity side of the court it is governed by the principles of equity followed by the Federal courts as distinguished from suits at law where local statutes are adopted. As local laws have no binding force upon the United States courts in matters of procedure in equity and

maritime law, the laws of Porto Rico relating to filing of notice of *lis pendens* have therefore no application in this case and the sufficiency of this bill must be determined by the rules and principles followed in like proceedings in the courts of the United States. *Stewart* v. *Wheeling & Lake Erie R. R. Co.*, 29 L., R. A. 438."

Proceeding then to apply what it deemed to be the conclusive force of decisions of this court, it was held that the pendency of an equity cause in a court of the United States affecting real property constituted constructive notice as to third parties and was therefore operative against those dealing with the owner as to such property in good faith, any rule of state law to the contrary.

In the argument at bar on behalf of the appellee the correctness of the ground upon which the court based its decision is insisted on as follows:

"The main contention of appellant, however, seems to be that even courts of equity of the United States in a State are bound by the statutory provisions for recording a *lis pendens* when such provision has been enacted in such State. But in this contention counsel fail to distinguish between cases at law and cases in equity, . . ."

Nevertheless, in substance, it is contended that even if the court below was wrong in its reasoning, it was right in its conclusion. This rests on the proposition that the court mistakenly assumed that the local law provided for a notice of the pendency of suit of the character of the *Todd case* and protected an innocent purchaser where a notice was not given.

That issue arises, therefore, and as it underlies the question whether the court should have applied the local law, we come first to ascertain the local law concerning notice and its effect.

It appears certain that by the ancient Spanish law the sale or the dismemberment by mortgage of the ownership of real property, which was involved in a pending litigation, was forbidden. (Law 13, Tit. 7, Part 3; see also Resolution of November 29, 1770, referred to in commentaries upon the Spanish

mortgage legislation by D. Leon Galindo y De Vera, ed. 1903, vol. 2, p. 594.) The result was that acts done in violation of the prohibitory law were void, even as to innocent third parties. But as pointed out by the author, just referred to, the prohibition in question was omitted from the Spanish Civil Code, and, therefore, the right to deal with real property, involved in a pending litigation, was no longer prohibited. And when the comprehensive system, known as the mortgage law, came to be adopted, the power of the record owner of real property involved in litigation to mortgage or contract concerning the same was not left to the implication resulting from the disappearance of the ancient prohibitions, but was expressly recognized by articles 71 and 107 of the mortgage laws. D. Leon Galindo y De Vera, in his commentaries, considering the provisions of the mortgage law concerning the power of the owner of real property to deal with it *pendente lite*, and of the right of the plaintiff in a suit affecting such property to obtain a cautionary notice, and his duty to record the same in order to affect third parties, points out that these provisions were the natural result of three considerations: respect for the rights of property, regard for the rights of one seeking redress in the courts against such owner, and solicitude for the public interest. Because of the first the owner was not deprived of his right to dispose of his real property merely because a suit relating to the same had been brought against him, but was left free to make contracts concerning the property, if anyone could be found willing to do so, and thus assume the risk of the pending litigation. On account of the second consideration a means was provided for giving a notice by which one who brought suit would be able to secure the results of an ultimate decision in his favor. Because of the third those dealing in good faith, in reliance on the public records, were protected from the risks of pending suits, unless the cautionary notice was made and recorded according to the statute.

That the essence of the statute was the protection of innocent third parties dealing with the recorded owner when no

cautionary notice had been given is obvious. Answering the contrary contention, D. Leon Galindo y De Vera says (p. 192):

"That is not so; if the mortgagor has on the record the ownership of the properties in litigation and those who claim the properties have not made the cautionary notice on the register, and the writing establishing the mortgage does not show that the properties are in litigation, the debtor can freely mortgage them, and the mortgage will have effect, even when the decision of the case is in favor of the plaintiffs, declaring that the ownership of the properties mortgaged belongs to them."

See articles 71 and 107 of the "Mortgage Law for Cuba, Proto Rico and the Philippine Islands," War Department Translation, 1899, and see also title 2 of the same law concerning the method of recording instruments and the effect of such record, and title 3 relating to cautionary notices.

Granting that the general result of the local law is as we have just stated it, the contention yet is that the character of the Todd suit and the nature of the relief sought therein caused it to be not within the scope of the mortgage law, and the provisions thereof for giving a cautionary notice. This is based upon article 42 of the mortgage law, reading:

"Art. 42. Cautionary notices of their respective interests in the corresponding public registries may be demanded by:

"1. The person who enters suit for the ownership of the real property, or for the creation, declaration, modification, or extinction of any property right. . . ."

And article 91 of the general regulations for the execution of the mortgage law, War Department Translation, 1899, as follows:

"The person who brings action for ownership, referred to in case No. 1 of article 42 of the law, may at the same time or subsequently request that a cautionary notice thereof be made, offering to indemnify any damages which may be caused the defendant thereby, should he win the suit."

Now, it is said when the issues in the Todd suit are clearly apprehended they were not within the purview of the articles

in question, since that suit did not seek to divest Ana Merle of the ownership of the property standing in her name on the public records, but simply to subject such property to the payment of the indebtedness due by the Agostinis to Todd. This, however, assumes that article 42 embraces only suits having for their object the entire divestiture of ownership—that is, the divestiture of perfect ownership—whilst the text of the article relied upon not only relates to suits so operating, but also to those which seek the modification "or extension of any property right." But even if the proposition relied upon might find some color of support in a narrow and technical construction of the provisions of the mortgage law referred to, its unsoundness is, we think, demonstrated by a consideration of other provisions of the law, especially articles 2 and 23 of that law, the first reading as follows:

"In the registries mentioned in the preceding article shall be recorded:

"1. Instruments transferring or declaring ownership of realty, or of property rights thereto.

"2. Instruments by which rights of use and occupancy, emphyteusis, mortgage, annuity (censo), servitudes, and any others by which estates are created, acknowledged, modified, or extinguished."

The second (art. 23) reads as follows:

"The instruments mentioned in articles 2 and 5, which are not duly recorded or entered in the registry, cannot prejudice third persons."

Mark the constructive power of the provision of the second paragraph of article 2, requiring the registry, in order that they may affect third parties, of all acts "by which estates are created, acknowledged, modified or extinguished" when applied to the words of article 43, providing for the registry of a cautionary notice, not only of all suits for the "ownership of real property," but likewise of suits brought "for the creation, declaration, modification or extinction of *any property right.*"

Besides, when the purpose of the mortgage law is borne in

mind, it is apparent that the interpretation relied upon would frustrate the very ends which the adoption of the law was intended to subserve.

But, passing this view, it is, we think, clear that the proposition rests upon a misconception of the true import of the bill in the *Todd case.* The property stood upon the records, not in the name of the Agostinis, but in the name of Merle. The bill alleged that the Agostinis, and not Merle, owned the property, because it had been bought and paid for by the former. The purpose, therefore, of the suit was to change the recorded title by in effect obtaining a decree placing the property in the name of the real owner. In the very nature of things, under the civil law, the cause of action thus asserted was not merely revocatory (the Actio Pauliana of the Roman law), but was an action to unmask a simulation. It was therefore essentially revendicatory. *Bonnafon* v. *Wiltz,* 10 La. Ann. 657; and see the copious list of authorities illustrating the subject, compiled in 2 Hennen's La. Dig. 1031, No. 1). The decree rendered conforms to this conclusion. It held Pedro Agostini to be the "owner of the equitable and beneficial title" to the property. It therefore divested the registered owner, Merle, of every essential element of ownership. This is clearly the case, since the *fructus,* the *usus* and the *abusus* could not be in one who was stripped of all beneficial interest. This becomes more clearly manifest when it is borne in mind that the civil law prevailing in Porto Rico is oblivious concerning a technical or formal distinction between legal and equitable title. As beyond peradventure, then, the suit and the decree took from the recorded owner the ownership upon which necessarily the innocent third party must have relied, we think it clearly follows that the cautionary notice required by the provisions of the mortgage law was essential to affect the innocent third person.

The remaining question, then, is, Was the local statutory rule of real property, requiring the giving and recording of a cautionary notice of the pending suit in order to affect innocent third parties dealing with the recorded owner, applicable to a

suit brought on the equity side of the United States District Court for Porto Rico? Let us assume, for the sake of argument, that the lower court correctly reasoned that an innocent third party would be affected by the constructive notice resulting from the pendency of an equity cause in a Circuit Court of the United States sitting within a State. Again, let us further assume, for the sake of argument, that it was correctly held that the rule just stated would govern, although there had been no compliance with a statutory rule of property prevailing in such State requiring the recording of a notice of the pendency of suits affecting real property, in order to make the same operative against innocent third parties. Neither of these concessions, we think, is here controlling. The District Court of the United States for Porto Rico is in no sense a constitutional court of the United States, and its authority emanates wholly from Congress under the sanction of the power possessed by that body to govern territory occupying the relation to the United States which Porto Rico does. Now, by section 8 of the act commonly known as the Foraker Act (31 Stat. 79, chap. 191) it is provided as follows:

- "Sec. 8. That the laws and ordinances of Porto Rico now in force continue in full force and effect, except as altered, amended, or modified hereinafter, or as altered or modified by military orders and decrees in force when this act shall take effect, and so far as the same are not inconsistent or in conflict with the statutory laws of the United States not locally inapplicable, or the provisions hereof, until altered, amended, or repealed by the legislative authority hereinafter provided for Porto Rico or by act of Congress of the United States. . . ."

The provision just quoted, it may be added, is qualified by a proviso repealing enumerated provisions of the local laws concerning marriage, divorce and other subjects.

Now, as a general proposition, it is clear that as a result of the relation which Porto Rico occupies to the United States all the local law of that island has its ultimate sanction in the

lawful exercise by Congress of its legislative authority. So also, as Congress has provided, that the local law, "not inconsistent or in conflict with the statutory laws of the United States," shall remain in force "until altered, amended, or repealed by the legislative authority hereinafter provided for Porto Rico or by act of Congress of the United States," it must follow that the local law of real property prevailing in the island is controlling until changed, as provided by Congress. This being true, we cannot assent to the conclusion that the court of the United States created by Congress had the authority to disregard the local law which Congress by express legislation directed to be continued in force. But it is said that the act (sec. 34) in providing for the District Court of the United States for Porto Rico declared, among other things, that that court shall have, "in addition to the ordinary jurisdiction of District Courts of the United States, jurisdiction of all cases cognizant in the Circuit Courts of the United States, and shall proceed therein in the same manner as a Circuit Court." From this it is argued that the constructive notice resulting from the equity cause in the District Court for Porto Rico must, in the nature of things, be operative against innocent purchasers without reference to the local law prevailing for cautionary notices and registry, if such result would flow from an equity cause pending in a constitutional court of the United States sitting within one of the States. But the proposition begs the question, since it puts out of view the express provision of the act of Congress sanctioning and enforcing the local law, except in so far as Congress had deemed fit to abrogate the same. Considering the manifest intent of Congress, we cannot close our eyes to the fact that that body, in providing a government for Porto Rico, evidently intended to preserve to the people of that island the system of local law to which they had been accustomed, nor can we, consistently with this enlightened purpose, assent to the conclusion that the mere provision of the act, by which a court was created to enforce the local law, empowered the court so created to set at naught the local law

by disregarding fundamental rules of real property governing in the island, thereby creating confusion and uncertainty, and hence tending to the destruction of the rights of innocent third parties. Especially is this conclusion rendered necessary when a consideration, previously adverted to, is again called to mind, that is, that all the local law of Porto Rico is within the legislative control of Congress. The considerations which we have thus expounded are illustrated in various other aspects by previous rulings, concerning the construction and import of the Foraker Act. *Crowley* v. *United States*, 194 U. S. 461; *Rodriguez* v. *United States*, 198 U. S. 156; *Seralles* v. *Esbri*, 200 U. S. 103; *American R. Co.* v. *Castro*, 200 U. S. 453.

 *The decree of the District Court for Porto Rico must be reversed, and the cause remanded for further proceedings conformable to this opinion.*