## BERWIND-WHITE COAL MINING COMPANY
### *v.*
## BORINQUEN SUGAR COMPANY.

San Juan, Equity, No. 897.

ON PETITION OF RECEIVER FOR INSTRUCTIONS AS TO BORROWING MONEY.

Porto Rico Mortgage Law.
    1. The Mortgage Law of Porto Rico is retained in force by the Foraker act, and binds the Federal court.

Berwind-White Coal Min. Co. v. Borinquen Sugar Co.

Federal District Court—Jurisdiction.

2. The district court of the United States for Porto Rico has full equity jurisdiction, except so far as is modified by Federal legislation. Romeu v. Todd, 206 U. S. 369, 51 L. ed. 1097, 27 Sup. Ct. Rep. 724, distinguished.

Receivers' Certificates—When Issued.

3. Receivers' certificates originated with public corporations, and are not issued except for the preservation of property. They may be issued in Porto Rico for the preservation of sugar centrals.

Receiver's Certificate—Postponement of Mortgage.

4. The interest on a mortgage, and payment of instalments on the principal, may be postponed to receivership certificates issued for the preservation of the property.

Receivership—Continuance.

5. A receivership is not in court for the purpose of staying there, and will be closed when it ceases to be preservative.

Receivership—Bankruptcy.

6. When a receivership is being properly conducted for the preservation of property in the Federal district court, such court will refuse to permit bankruptcy proceedings.

Opinion filed July 1, 1913.

*Messrs. Hartzell* and *Rodriguez Serra* for the receiver.

*Mr. F. H. Dexter* for the Commercial Bank of Porto Rico.

*Mr. Jorge Dominguez* for the Banco Territorial y Agricola.

*Mr. Chase Ulman pro se.*

HAMILTON, Judge, delivered the following opinion:

The receiver in this cause represents that under previous orders of the court he has applied to different financial insti-

tutions for the usual advances to make the sugar cane crop for the ensuing twelve months, but finds that, on account of the business uncertainty at present prevailing, due to apprehension of the result of a lowering of the tariff as now pending before Congress, he is unable to secure more than what is necessary, say $200,000, to make the crop, and cannot secure funds to meet the interest on the two outstanding mortgages represented by the Commercial Bank of Porto Rico and the Banco Territorial y Agricola, nor the $28,000 reduction on principal of the second of the above mortgages. He further shows that the crop in the ground and its incidents are worth the sum of $100,-000, and that unless cultivation proceeds as usual this will be entirely lost to all concerned, and represents under oath his belief that if the crop be proceeded with, under advances now asked, he will during the ensuing crop year realize upwards of $300,000, and thus repay advances, and be able to meet the interest and other charges now sought to be postponed. Incidentally to this he asks that certain unremunerative leases be abandoned, and that he be authorized to pay the expenses connected therewith up to the present. He represents further that the enterprise must be financed now if at all, and that it is of great importance to all creditors to keep the Borinquen Sugar Company in order as a going concern. That on account of the panicky conditions prevailing in Porto Rico for some time past, and which in all probability will continue for some months to come, it would be impossible to dispose of the plant now except at a ruinous sacrifice. Under these circumstances he asks the instructions of the court.

On the other hand, the Commercial Bank of Porto Rico, representing the first mortgage of $135,000, dating from 1907,

and of the Banco Territorial y Agricola for $365,000 (less $28,000 already paid on account), dating from 1910, oppose the application, and prefer that the Borinquen Sugar Company be wound up and its property disposed of at the present time. There are $572,000 of unsecured creditors, who have been notified, but make no appearance. The company, representing $600,000 of stock, does not consent, but the plaintiff assents to the application of the receiver. The case is submitted on the sworn pleadings and report of the receiver.

This application brings up several important questions which will be discussed consecutively.

1. The two mortgages represented were contracted under what is called the Mortgage Law of Porto Rico, enacted in 1890, and continued in force since the American occupation. This law is full and complete, and, so far as relates to real property, is almost the Magna Charta of land contracts and confidence in the island. The court recognizes this law as in force and binding in all respects, and has no wish, by anything that may be said or done, to cast the slightest doubt upon it. The Foraker act expressly continues all such laws in force. Act of April 12, 1900, § 8. Romeu v. Todd, 206 U. S. 369, 51 L. ed. 1097, 27 Sup. Ct. Rep. 724. See Porto Rico Civ. Code, § 1781. Royal Ins. Co. v. Miller, 199 U. S. 353, 50 L. ed. 226, 26 Sup. Ct. Rep. 46.

2. The question is raised that this court is one of limited jurisdiction, and cannot go beyond the local legislation. This, however, is not true to the full extent asserted. This court is not a constitutional court, in the sense that it is not a district court in one of the sovereign states of the American Union. Being in a possession or territory of the United States, it from

Berwind-White Coal Min. Co. v. Borinquen Sugar Co.

the necessity of the case is instituted by legislation of Congress, and is confined to the legislation creating it. The Mortgage Law, for instance, as held in the Romeu Case, is continued in force by the Foraker act, and controls this court. It would, however, control a Federal court in any of the sovereign states of the Union to almost the same extent. The court is not prepared to hold that its powers as a court of equity are different from those of a court in the United States proper; except so far as follows from legislation. Without the receivership jurisdiction, a court of equity is emasculated. It is worthy of note, moreover, that the importance and beneficence of receiverships, has been recognized by local legislation in Porto Rico by the Acts of 1904, p. 232. The Foraker act in § 34 expressly provides that this court shall proceed in the same manner as the other Federal courts, and in the same manner as circuit courts of the United States,—and these have full equity jurisdiction. The equity jurisdiction of United States courts is given by the Constitution, and we therefore hold that this section of the Foraker act, if any legislation were needed, extended this portion of the Constitution to Porto Rico. The Romeu Case decides merely that the *lis pendens* which goes with the filing of a suit in equity in the states does not prevail in Porto Rico as against the direct provision of the Mortgage Law that liens to become effective must be filed in the proper registry of property. A court of equity might nevertheless control an individual in the exercise of this and of any other right.

It must be remembered in a legal proceeding that there are two classes of rights, one substantive and the other remedial. Sir Henry Maine and others show that in the development of law the remedies came first, and the substantive rights grew

Berwind-White Coal Min. Co. v. Borinquen Sugar Co.

out of them, but in the actual state of law there is now a difference between the two classes. It has been uniformly held that remedies may be changed without impairing vested rights, and we understand the Romeu Case as saying that the registry of a lien, being a substantive right of property, cannot be impaired by a conflicting rule of equity practice. This is not at all saying that remedies for the enforcement of substantive rights may not be varied or deferred according to the course of procedure in a court of equity. Postponement of remedy in a proper case is not necessarily an impairment of the contract itself. Bouvier's Law Dict. s. v. Remedy.

3. This application to borrow money involves a question of issue of receivers' certificates, for the money can be borrowed only upon the faith of the court, upon reliance that the court will enforce the collection as against all other claims, and it is argued with much force that receivers' certificates can be issued only in the case of public corporations, such as railroads. There is no doubt that, on account of the public franchise enjoyed, the right to issue receivers' certificates originated with such corporations, and its application to private corporations is exceptional. High, Receivers, § 312–b. Nevertheless it has been applied to hotel property and other enterprises which must be kept as going concerns to be of value. Cake v. Mohun, 164 U. S. 311, 41 L. ed. 447, 17 Sup. Ct. Rep. 100; 34 Cyc. 296-a, 300-1. The use of receivers' certificates is a species of application of the principle of receivership itself. Neither the one nor the other will be applied except for the preservation of property; and in some cases this, rather than the public nature of the enterprise, is probably the doctrine that should prevail.

23 Am. & Eng. Enc. Law, 1121; Wallace v. Loomis, 97 U. S. 146, 24 L. ed. 895.

However this may be, the application at bar relates to an enterprise not strictly private in character. The chief business of Porto Rico is sugar production, and what is decided as to one central becomes applicable to all. If all the centrals were united in one, controlling much over half of the whole business of the island, it would be evident that such an application as the present would relate to a public concern, and come under the general rule. The fact that there are a number of centrals does not change the state of the case, when what is decided as to one would be the rule as to all.

4. The application at bar seeks to postpone the payment of the interest on a mortgage, and of an instalment on a mortgage which will accrue during the next twelve months, the point being that in the sugar business the crop year controls. Whatever is done must be done for a year, or not at all.

The court having decided, therefore, that receivers' certificates are allowable in the present case, the question arises, Can they be issued for the purpose of growing a crop, and be made superior in any respect to the interest upon an admitted mortgage? By taking jurisdiction a court of equity assumes control of the *corpus* of the property, and forbids claims to be enforced in any other court than that where the property is being administered. A receivership is in the nature of a sequestration. High, Receivers, § 5. The court may authorize a receiver to carry on business and pay the expenses out of the income. High, Receivers, § 36. Some decisions go further, and hold that expenses can be met also out of the *corpus* of the property. This is not so clear, particularly when opposed, as in this case,

Berwind-White Coal Min. Co. v. Borinquen Sugar Co.

by the bondholders. In the case at bar, however, the application does not relate to applying any portion of the *corpus* to the payment of expenses, and so this point need not be considered. A receivership does not change or destroy existing liens. Property comes into the hands of the court subject to all liens existing at the time of the receivership. The only effect of the receivership is that it prevents the execution of ordinary process, and prevents the use of ordinary proceedings. High, Receivers, § 141. Everything must be done by petition or motion to the court of administration. High, Receivers, § 254-b. The court can by special order permit separate suits, but petition is preferred, so that matters can be adjusted by the court or by its master without delay or apparent conflict.

It is difficult under these principles to see in what respect a mortgage debt differs from any other, except in the right to ultimate payment. In receiverships all remedies are postponed, so that the court may collect the property, summon in creditors, marshal assets, and pay claimants according to their amounts and priorities, and this cannot be done without such postponement. A court of equity administering such an estate may refuse leave to foreclose a mortgage. High, Receivers, § 54–b. In the case at bar the receiver asks that this power be exercised in order to preserve the property, and the court does not see any reason why the court may not, provided it be necessary for the preservation of the property, postpone the payment of an instalment of interest or an instalment of the principal.

It is to be recalled also that the matter of this receivership is not a new one. This receiver has already been acting for a crop season without any objection on the part of the bondholders, who certainly have known of his appointment, and

Berwind-White Coal Min. Co. v. Borinquen Sugar Co.

now testify in open court to the care and success of his administration.

5. It must, however, be distinctly understood that neither this receivership nor any other is in court for the purpose of staying there. A receivership is merely for the preservation of property, and will be continued only so long as it seems to the court probable that it should be kept there for the advantage of all parties concerned. If it should at any time appear that, instead of being preservative, the receivership is wasting the property in expenses, the receivership will be closed at once. The case at bar presents a case of preservation. It is essential that the enterprise be kept as a going concern, particularly as there seems to be some hope of reorganization; and certainly a winding up at the present time would sacrifice everybody except the bondholders. Their opposition to the application may be natural, but does not present itself favorably to the court. They are absolutely safe with the postponement of the one year applied for, while, on the other hand, it seems probable that an administration for another year will improve the property and meet with improved business conditions. Under these circumstances, the court thinks that it is its duty to continue the receivership and give the receiver the power to negotiate the loans in the manner requested, and, as incidental to this, to postpone for a reasonable time the payment of mortgage interest and instalments, but without impairing the mortgage liens.

6. The question then comes up whether such a postponement gives the bondholders or anyone else the right to apply to this court for orders which will take the administration out of the hands of the receiver and turn it over to a trustee in

Berwind-White Coal Min. Co. v. Borinquen Sugar Co.

bankruptcy. It is suggested that the state of bankruptcy is a continuous thing, and can be taken advantage of at any time. As to this, however, there can be no room for question. Where a state chancery court has appointed a receiver, who has property in the course of administration, a Federal court will respect the receivership. High, Receivers, § 52. The point is that the court of proper jurisdiction which first takes hold will not be disturbed. It might be that bankruptcy proceedings would be permissible, if they would relate only to such property of the bankrupt as is not in the hands of the receiver. In the case at bar this would be nothing whatever. High, Receivers, § 51; Loveland, Bankr. § 44. This court will in a proper case, therefore, refuse to permit bankruptcy proceedings to disturb the administration of its own receiver. It would be nugatory, and courts will not sanction a vain thing.

7. The application as to canceling certain leases, however, is not presented with such fullness that the court can pass upon it, and this particular matter is hereby referred to Special Master John M. Dabney to hear and report his findings.

It follows from the above opinion, therefore, that the application of the receiver in this case will be granted, and a decree will be entered accordingly.