María Antonia Larracuenta et al., Plaintiffs and Appellants, v. José Fabián Joglar et al., Defendants and Appellees.

No. 7977. Argued March 8, 1940.—Decided May 22, 1940.

*A. Marín Marién* for appellants. *Zayas Pizarro & Teissoniere* and *Sergio León Lugo* for appellees.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

On April 23, 1937, María Antonia, María Olegaria, Guillermo and Gregorio Larracuenta brought an action in the District Court of Arecibo against José Fabián Joglar, Cándido Noriega and Banco de Ponce to recover, from Joglar the

possession of two undivided joint interests respectively consisting of one-twelfth and of one-third of one-twelfth on a certain piece of rural property and payment of a certain liquidated sum for fruits, and from Noriega a certain further liquidated sum for fruits. The plaintiffs also sought the cancellation in the Registry of Property of the records in connection with the undivided joint interests in favor of Pedro Alonso, Pedro Such, Heraclio Costas, Cándido Noriega, José Fabián and Banco de Ponce. The costs to be assessed against the defendants.

In support thereof it was alleged that Gregorio Larracuenta Ballester became the owner on October 21, 1898, of one-twelfth interest in a certain piece of rural property situate in the Guaonico barrio of Utuado, with an area of 87 cuerdas (1 cuerda is equivalent to 0.97 of one acre), which was recorded in his name in the registry;

That Larracuenta Ballester died on January 7, 1903, and left as his sole universal heirs his recognized natural children, the plaintiffs herein;

That ever since 1916, Pedro Alonso, without the consent of the plaintiffs, took possession of the undivided joint interest and a few months afterwards conveyed the same to Pedro Such who in turn conveyed it to Heraclio Costas;

That as the result of foreclosure proceedings upon the whole property brought by defendant Noriega against Heraclio Costas, there was assigned to Noriega, together with the remainder of the property, the joint interest which he held from September 20, 1921, until August 27, 1926, when he sold the whole of the property to the other defendant Joglar, subject to a mortgage in his favor for part of the purchase price. Joglar has ever since been in possession of the property. Subsequently Noriega sold the mortgage to the other defendant, Banco de Ponce;

That Joglar is in possession at present of the said property, with the new measurements and description as stated;

That the above persons and entities knew at the time of the acquisition by them of the aforesaid interests in the jointly owned property that the same belonged to Larracuenta and his heirs and not to the assignors thereof.

Then follow the allegations regarding the fruits.

They further alleged as a second cause of action that Larracuenta Ballester bought on June 2, 1900, another undivided joint interest of one-third of a twelfth part of the aforementioned estate, which was recorded in his favor in the registry of property. This latter jointly owned interest followed the same fate as the one previously acquired.

The defendants filed demurrers and finally answered. The case went to trial and in a judgment dated June 27, 1938, the court dismissed the complaint, without special pronouncement as to costs.

It is well to transcribe the opinion stating the grounds for the judgment. It reads as follows:

"At the hearing of the case, the plaintiffs failed to produce evidence regarding most of the facts alleged, and relied on conclusions based on the answer of the defendants which, they claim, are an admission of the facts alleged in the complaint. It appears from a consideration of the answers and defenses, that there are no such admissions, except here and there where there is some ambiguity.

"A motion for nonsuit was filed when the plaintiffs rested. We were unable to pass upon the same immediately, because the plaintiffs insisted that by the papers submitted and the sworn complaint they had proved their case, bearing in mind the admissions of the answer. Some time was required in order to consider the above conclusions, and the defendants decided to submit their evidence before the continuance of the case. We will, therefore, dispose of the case as if the motion had been denied.

"The plaintiffs submitted documentary evidence to prove their title to the jointly owned interests claimed by them in their two causes of action. The defendants produced documents to show how the title to such jointly owned interests was successively conveyed to them. The theory of the plaintiffs is that said conveyances are absolutely void, and they base their contention on the claim that the contract entered into with the first purchaser, Alonso, was void.

" *      *      *      *      *      *      * .

"The first conveyance, whose nullity is alleged, was a marshal sale in execution of a judgment of the Municipal Court of Utuado, by virtue whereof the rights or jointly owned interests of the plaintiffs in the property sued on herein were awarded to Pedro Alonso as the highest bidder at the public auction sale held on civil case No. 99, for the recovery of professional fees, decided in the above court.

"The plaintiffs allege that no judgment whatever was entered against them, because by the judge's decision Antonia Arroyo was adjudged personally and as the mother of the plaintiffs to pay the sum claimed, but that no direct reference was made to them.

"We find from an examination of the record that the complaint was filed against Antonia Arroyo personally and in her capacity as mother with *patria potestas* over her children who were specifically mentioned by their names; that all the defendants, including the minor, were personally summoned and that all of them appeared and answered the complaint, having first obtained from the court the setting aside of a default and judgment previously entered. In its final judgment the court decreed that the plaintiff shall recover the amount claimed in the complaint from the defendants who are then mentioned as follows: Antonia Arroyo personally and in her capacity as mother with *patria potestas* over her minor children (then follow their names).

"Every action must actually be brought by or against the real party in interest against whom the judgment shall be entered. The better practice is to mention first the minors by name and then add the name of the father or mother, with *patria potestas,* as representing them; but the form used in the suit against the minors and in entering judgment is implicitly authorized in section 56 of the Code of Civil Procedure, inasmuch as the mother with *patria potestas* in Puerto Rico has the same powers as the general guardian mentioned in said section where it is provided that the appearance of a minor who is made party to an action must be entered by such guardian. If in an action against a minor it is stated that the mother is made party defendant personally and further as mother with *patria potestas,* such minor is included as a party in interest, and the judgment can be entered similarly in representative form.

"The other ground for nullity alleged by the plaintiffs is that the judgment entered was for one hundred dollars and the writ of execution was for two hundred dollars, because of an error of the clerk in drawing up said writ.

"As a rule such a defect is of no importance, if the amount is below that granted in the judgment. Where the amount of the writ

748

of execution is above that allowed in the judgment, the question is of more or less importance, according to the damage inflicted upon the party against whom the execution is levied. If, for instance, goods are sold in excess of those which should have been sold if the judgment had been strictly complied with, the execution might be set aside, or if the excess of the proceeds of the auction sale had not been handed over to the defendant.

"Even assuming that the irregularity committed was voidable, we think that the same does not affect the titles of those defendants who were subsequent purchasers. It does not appear from the registry, as evidenced by the certificate produced, that such error was committed; nor was it shown that the defendants knew of such defect. Only a single piece of property was executed in connection with the jointly owned interests, the same property that would have been executed if the writ of execution had been for one hundred dollars. Moreover, the error was not of such a nature as to render the execution void as to third purchasers; at most the sale was voidable, and its nullity should first have been sought through an action and not through a collateral attack, as sought by the plaintiffs herein. We are inclined to think that any action against the defendants would prescribe on that score, unless such defendants could be charged with fraudulent knowledge.

"Nothing appears from the certificate of the registry regarding the antecedents of the property that might support a judgment to the effect that the conveyances to the defendants do not constitute a just title, and still less that the same are absolutely void, in which case only direct action for the recovery of the jointly owned interests might prosper, because account must be taken of the time elapsed, which covers the acquisitive prescription."

Appellant Guillermo Larracuenta abandoned the appeal. The brief was filed in behalf of the other plaintiffs. It is alleged therein that the district court erred: in holding that the judgment rendered by the Municipal Court of Utuado, by virtue of which an execution was levied upon the jointly owned interests of the first cause of action, affected plaintiffs María Olegaria and Gregorio Larracuenta, and in any event the other plaintiff María Antonia Larracuenta; in failing to determine whether there was sold by virtue of such judgment the jointly owned interest of the second cause of action; in regarding as valid the execution of said judgment in spite

of the fact that such execution was levied for two hundred dollars while the judgment was for one hundred dollars only; in failing to properly apply articles 33 and 34 of the Mortgage Law; in declaring that the acquisitive prescription was in force, and in dismissing the complaint.

■ The defendants introduced in evidence the record of the case in which the judgment was rendered by virtue of which there were sold in 1916 the jointly owned interests claimed herein. The title of the complaint reads as follows: "Francisco R. Flores, plaintiff, vs. Antonia Arroyo, personally and as mother with *patria potestas* over her minor children María Olegaria, Guillermo and Gregorio Larracuente Arroyo, and Abelardo Moyé and his wife María Antonia Larracuente Arroyo, defendants. Personal action for recovery of professional fees."

The complaint is not fully transcribed in the transcript of the evidence. Then comes the summons. Its return reads as follows:

"I, Luis Cortés, state under oath: that I am more than 18 years old; that I am not interested in this case; that the present summons was handed to me at 3 P. M. on the 20th of July, 1915, and that I personally served the same on the 21st of July, 1915, on Antonia Arroyo personally and as representative of her minor children María Olegaria, Guillermo and Gregorio Larracuente, as well as on the latter and on Abelardo Moyé and his wife María Antonia Larracuente Arroyo, the defendants mentioned in said summons, by delivering to said defendant and leaving in her possession personally, in the municipal district of Utuado, P. R., a copy of said summons, and by delivering to Antonia Arroyo a true and faithful copy of the complaint in the suit mentioned in said summons and of the present return.

"Dated this 21st day of July 1915.—(Signed:) Luis Cortés, Marshal."

The defendants having failed to appear, the plaintiffs, on August 2, 1915, moved for their default, which was entered by the clerk on the same day.

The trial was set for two days afterwards, and a judgment was entered which reads as follows:

"On this the fourth day of August nineteen hundred and fifteen set by the court for the hearing of the present case and in open court, there appeared in person plaintiff Francisco R. Flores, but the defendants failed to appear and their default was duly entered.

On motion of the plaintiff the reading of the complaint was waived.

"The plaintiff....introduced his evidence....

"And the court, after hearing the allegations of the plaintiff and the evidence introduced, finds that the law and the facts favor the plaintiff and decrees that the latter recover from defendants Antonia Arroyo personally and as mother with patria potestas over her minor children María Olegaria, Guillermo Larracuenta y Arroyo, and Abelardo Moyé and his wife Antonia Larracuenta Arroyo, the sum of two hundred dollars, as well as the costs.

"Let this judgment be entered . . . .

"(Signed:) Gabriel Castejón, Municipal Judge of Utuado . . . .

"Utuado, P. R., August 4, 1915.—(Signed:) Fed M. Maestre."

On August 16, 1915, the judge, on motion of the plaintiff, ordered the execution of the judgment, and on the 20th of the following month of September there appeared "the defendants hereinbefore summoned, who are minors represented by their mother, defendant Antonia Arroyo" who prayed, on the grounds alleged by them, that they be relieved from the judgment, and enclosed their answer. The court heard the parties, ordered "the opening of the default of the defendants and granted them ten days for filing their answer and for availing themselves of any other remedy, provided said defendants pay to the plaintiff the costs incurred after the entry of the default." The next paper is the answer, which is subscribed as follows:

"Per my minor children Antonia—X—Arroyo. Witness of the mark; Marcos Gand."

After a hearing in the way expressed therein, the second judgment was entered as follows:

"On this day, which was the day set for the hearing of this case by the court and in open court, there appeared the plaintiff personally but none of the defendants appeared.

"The plaintiff moved for the hearing of the case and produced as proof that the defendants had been served with notice of this setting five days before, a sworn statement which is included in the record. The court ordered that the case be heard.

"The plaintiff read his complaint and submitted his evidence . . .

"And the court, after duly considering the allegations of the plaintiff and the evidence heard, finds that the law and the facts favor plaintiff Francisco R. Flores and enters this judgment and decrees that the latter recover from defendants Antonia Arroyo, personally and as mother with *patria potestas* over her aforementioned minor children María Olegaria, Guillermo and Gregorio Larracuenta, the sum of one hundred dollars, as well as the costs, expenses and disbursements in the action.

"Let this judgment be entered . . .

"Given in open court in the city of Utuado on this the 15th day of December 1915.

"(Signed:) Gabriel Castejón Hernáiz, Municipal Judge of Utuado."

Then follow two writs of execution issued by the clerk of the municipal court by order of the judge thereof. The latter was issued on December 28th, 1915. Its first recital reads as follows:

"Whereas, on the 4th of August and on the 15th of December 1915, plaintiff Francisco R. Flores obtained a judgment in the Municipal Court for the Municipal Judicial District of Utuado against Antonia Arroyo, personally and as mother with *patria potestas* over her minor children María Olegaria, Guillermo and Gregorio Larracuenta Arroyo and Abelardo Moyé and his wife Antonia Larracuenta Arroyo in the sum of two hundred dollars, with interest thereon at the rate of six per cent annually as from August 4th, 1915, as to the sum of one hundred dollars, and as from December 15th, 1915, as to the other one hundred dollars, until full payment is effected, plus nine dollars for costs and disbursements made at the time of the said judgment, and any costs that may be incurred, as shown by the record."

From the marshal's certificate we transcribe as follows:

"I hereby certify that I received the present writ of execution on the 30th of December, 1915, and that I served the same on the 19th of January, 1916, and that I sold in public auction the properties previously attached which are described in the minutes of the auction sale, viz., every right, title or interest in the defendants to or in an estate situate in the Guaonico barrio of the municipal district of Utuado, that is to say, an undivided joint interest in said estate, consisting of eleven twelfths per cent (*once enteros dozavos por ciento*), the proceeds of the auction sale amounting to two hundred and fifty dollars, of which two hundred and twenty-nine dollars and forty cents were paid on the spot to plaintiff Francisco R. Flores who gave a receipt for such sum.

(Signed:) Pedro de J. Vega.—Marshal."

And from the minutes of the auction sale:

"In the present auction sale there appears Vicente Medina, who bids two hundred and twenty five dollars for the property attached. Pedro Alonso bids two hundred and fifty dollars. As nobody else bids higher than Alonso and after the lapse of and hour and twenty minutes the property attached is awarded to Alonse for the above sum of two hundred and fifty dollars. The present auction sale is closed, as witness the signatures of the plaintiff and of the purchaser."

Then comes the public deed of the judicial sale executed on February 16th, 1916, before Notary Eduardo Marín Marién. A recital is made therein of the proceedings had in the municipal court; of the writs issued; of the attachment; of the publication of the notices; of what took place in the auction sale, and of the execution of the marshal sale as follows:

"And after stating the facts above set forth, the parties proceed to the execution of the present marshal sale under the following stipulations:

"*First:* Pedro de Jesús Vega, in his capacity as marshal of the Municipal Court of the Municipal Judicial District of Utuado, Puerto Rico, and in the exercise of the powers conferred on him by law and in complance with the judgment rendered in the action already referred to, sells in behalf of defendants Antonia Arroyo and her chil-

dren María Olegaria, Guillermo and Gregorio Larracuenta y Arroyo and Abelardo Moyé and his wife María Antonia Larracuenta y Arroyo, to Pedro Alonso Isla, every right, title and interest held by the above mentioned people in an undivided joint share consisting of eleven twelfths per cent of the property already described, the consideration for such sale being the sum of two hundred and fifty dollars which the purchaser paid in cash at the auction sale in American money.''

The deed of sale was recorded in the registry of property in April 1916, as shown by a certificate from the registrar, which reads as follows:

''By virtue whereof, I record in favor of Pedro Alonso Isla the jointly owned interest which the Larracuenta Arroyo people held in this property by reason of its sale at public auction, with the remediable defects of the omission to accompany or enclose with the instrument presented for record proof to show that the Municipal Court of Utuado had acquired jurisdiction over the defendant heirs, and of the failure to accompany or enclose either the minutes of the public auction sale.''

It likewise appears from the certificate of the registrar:

''FIRST.—That in record thirty one on the back of folio two hundred and nineteen of volume 100 of Utuado there is a marginal entry which literally transcribed reads as follows:

'' 'The defect stated in the enclosed record thirty first relative to the failure to enclose with the deed the subject matter of this entry any paper to show that the Municipal Court of Utuado had acquired jurisdiction over the defendant heirs IS REMEDIED because Federico M. Maestre, clerk of the Municipal Court of Utuado in a certificate issued by him on August 4 of the current year makes a statement which literally transcribed reads as follows: (there is here transcribed the return already known to us). It so appears from said certificate... being recorded . . . in Roll 112 of public instruments.—Arecibo, December 5, 1916....'

''SECOND:—That in record thirty four on the back of folio two hundred and twenty four of said volume 100 of Utuado there is a marginal entry which literally transcribed reads as follows: 'The defects stated in the enclosed record 34 as to the failure to state a full description of the heirs and their domicile, ARE REMEDIED, because of the filing of four certificates issued on January 20, 1916,

by Moisés Jordán, who is the keeper of the Civil Registry of Utuado, which contain the birth certificate of . . . .'

"THIRD:—That in record thirty five on the back of folio two hundred and twenty five of said volume 100, there is a marginal entry which literally transcribed reads as follows: 'THERE ARE REMEDIED the defects noted in the enclosed record 35, because of the filing of a certificate issued on November 13 ult. by Fd. M. Maestre, clerk of the municipal court of Utuado, which includes the summons issued by said clerk and served on the defendant heirs of Gregorio Larracuente Ballester on July 21, 1915, and the minutes of the public auction sale of the property, which sale was carried out on January 19, 1916, by the marshal of the above court, Pedro de J. Vega; and at the request of José Fabián Joglar . . . . by deed number 27 executed in Utuado on the 5th inst., before notary Antonio E. Suliveras Colón, which deed was filed together with said certificate in this office at 3 p. m. of the 10th inst., record entry 199 of vol. 147 of the Journal.—Arecibo, February 26, 1930.' "

Even at the risk of making this opinion too long and of incurring in repetitions, we have transcribed the relevant part of such contents of the record as, in our opinion, speaking for themselves, explain the facts of the present case.

We will consider in the first place the matter of jurisdiction. We know how was drawn up the complaint filed in the Municipal Court of Utuado; how the summons was served on the defendants including those who appear here as plaintiffs and appellants and who were then minors; how judgment was entered; how Antonia Arroyo appeared in behalf of the appellants her minor children and moved that they be exempted from its effects; how the judge granted said motion, and how, after a hearing, he again entered judgment. From the knowledge of these facts no other conclusion can be reached except that the municipal court proceeded with jurisdiction.

The reasoning of the trial court in this particular is correct. It will be sufficient for us to transcribe what this court said through Mr. Justice De Jesús recently in *Valiente* v. *Carrasquillo*, decided on April 4, 1940, and which reads as follows:

"The initial paper, which amounts to the complaint in an ordinary action, was directed against José Leoncio Valiente, *'personally and in behalf and as the representative of his minor children Arturo Manuel* and *María Valiente Díaz'*, which was tantamount to direct the action against Arturo Manuel and María Valiente, minors, and José Leoncio Valiente, personally and as the representative of his two aforementioned children. To our mind this is a mere matter of form which does not, nor could it, affect the substantial rights of these plaintiffs...."

■ It clearly appears from the papers above transcribed that the two jointly owned interests were sold pursuant to the judgment of the municipal court. The fact is that no mention was made of the sale of a jointly owned interest consisting of a twelfth part and of another consisting of one-third of a twelfth part, but of a jointly owned interest consisting of "eleven twelfths per cent," and this could be done because there were involved undivided joint interests in the same estate.

It was unnecessary for the trial court to explain this particular. The totality of the sale was assumed and this could be done not only by relying on the evidence, but on the very allegations of the plaintiff in his complaint as well.

■ Let us now consider whether the sale was void because of the discrepancy between the second judgment of the municipal court and the writ issued for its execution.

In this connection the district judge failed to weigh the full import of the facts as shown by the evidence. He admitted that an error had been committed in the issuance of the writ for two hundred dollars while the judgment was for one hundred dollars only. And upon this premise he reasons regarding the consequences from such error, which to his mind might render the judicial sale made pursuant to the writ voidable but not void.

We think, however, that the evidence although ambiguous tends to show that the writ for two hundred dollars was justified. The first judgment of the municipal court, that is, that of August 4, 1915, which was entered against all the

defendants, was for two hundred dollars. This judgment was set aside on motion of Antonia Arroyo filed in behalf of her minor children. Her daughter Antonia, married to Abelardo Moyé, failed to act. The new judgment entered on December 15, 1915, for one hundred dollars was so entered only against "Antonia Arroyo personally and as mother with *patria potestas* over her minor children whose names are María Olegaria, Guillermo and Gregorio Larracuenta."

Such being the case, it cannot be maintained that the writ for two hundred dollars is not justified. Such writ was issued by the clerk as directed by the court and expressly refers to the two judgments and is authentic modern interpretation of their import. If we should conclude that such interpretation is justified by the record, nothing further would have to be considered by us in order to dismiss the appeal. The title of the first purchaser would become indisputable.

However, as this is a doubtful point, we will confine ourselves to establish such fact. The conclusion reached by the trial court regarding the consequences of the defect, that is, that the sale was at most voidable but not void becomes thereby stronger.

■■ Inasmuch as the title is voidable in the light of the provisions of the Civil Code, of the Mortgage Law and of the decisions, the action of the plaintiffs cannot prosper as against the present holder.

Pedro Alonso Isla was the first purchaser. He bought in the 1916 judicial sale and recorded his title in the registry of property in April of the same year, and the registrar made the record with a certain defect regarding the jurisdiction and which was remedied in the same year.

Subsequent purchasers bought from persons who had their title recorded in the registry whose books failed to reveal that the price paid in the 1916 judicial sale had been a larger amount than that allowed in the judgment, or that part of the property sold belonged to somebody not included

in the judgment, or that there was some doubt more or less justified regarding the matter. When defendant Joglar, the present holder, bought the property claimed by the plaintiffs in August 1926, such property had already been for ten years in the possession of Alonso and his successors in interest as owners, with title recorded in the registry, and he continued in possession thereof as owner, with recorded title, without being disturbed in such possession, or without his title being challenged until April 1937, when the present action was commenced in which it was alleged that the conveyance to Alonso was void by reason of defects which do not appear from the registry or which were therein remedied. See *Romeu* v. *Todd*, 206 U.S. 358, and *Ayllon et al.* v. *González et al.*, 28 P.R.R. 61.

By prescription and under the terms prescribed by law ownership of real property is acquired or extinguished.

Ownership of real property shall prescribe by possession for ten years as to persons present, and for twenty years with regard to those absent, with good faith and with a proper title. Section 1857 of the Civil Code, 1930 ed. In the case at bar defendant Joglar and his predecessors in interest had been in uninterrupted possession, as owners, with a recorded title, at the time of the filing of the complaint. Good faith of the possessor consists in his belief that the person from whom he received the thing was the owner of the same and could convey his title. Section 50 of the Civil Code, 1930 ed. Here the good faith of Alonso, the first to buy in 1916, appears from the very deal made by him. He saw the public notice of the judgment sale at public auction. He attended the sale. Was the highest bidder. Paid the amount of his bid. There is not the slightest evidence that he was aware of anything unlawful or irregular at all in the proceedings. Everything tended to confirm him in his belief that the marshal was empowered to convey the ownership to him in behalf of the owner. And as to the good faith of Joglar, the present holder, we do not think that the same

758

could be questioned. See *Martorell et al.* v. *J. Ochoa & Brother,* 25 P.R.R. 731.

By a proper title is understood that which legally suffices to transfer the ownership or property right, the prescription of which is in question. Section 1852 of the Civil Code, 1930 ed. In the case at bar all the titles in the conveyances until the purchase by Joglar, commencing from the sale at public auction in execution of the judgment entered against the owner of the property sold in 1916, are in themselves sufficiently valid for conveying the ownership and all were proven by their record in the registry. Section 1854 of the Civil Code, 1930 ed. See *Martorell* v. *Ochoa, supra,* and *Picart* v. *De León,* 22 P.R.R. 553.

The title for prescription must be true and valid. Section 1853 of the Civil Code, 1930 ed. In the instant case there is not the slightest imputation of fraud or simulation. Everything therein is based on the claim that the marshal sale of 1916 was void, and we have concluded that it was at most voidable and on the constructive knowledge on the part of every purchaser, including the present one, of the grounds that render a sale void.

By virtue of the foregoing, and as the errors assigned were without merit, the appeal must be dismissed and the judgment appealed from affirmed.