HARRY P. LEAKE ET AL.

*v.*

WALTER MCK. JONES ET AL.

---

Ponce, Equity, No. 260.

CONSTRUCTION OF CONTRACTS AND DECREES.

Equity—Purchase Subject to Another Claim.
  1. Where a party purchases a claim, with knowledge of one already existing, he is not a bona fide purchaser for value without notice.

Leake v. Jones.

Equity—Purchase of Claim in Suit.

2. Where a claim is stated in the contract to be subject to a suit, the purchaser holds in subordination to whatever rights may be acquired by other parties in the suit.

Lease—Title.

3. The fact that a lease with a power of purchase was construed by the parties and courts as in effect a mortgage is binding upon all concerned.

Equity—Substance.

4. Equity goes to the root of a matter, and is not controlled by forms.

Litigated Credit—Porto Rican Code.

5. The provision of the Civil Code of Porto Rico, § 1438, as to redemption of a litigated credit at the price paid applies to legal rights under a sale of an unquestionable debt, but it does not apply to an absolute deed declared to be a mortgage. This is governed by equitable principle, and does not come within this provision of the Civil Code.

Redemption—Tender.

6. The provision of § 1144 of the Civil Code of Porto Rico does not necessarily apply to suits in equity to establish a mortgage. A tender in equity is governed by special equity rule.

Tender—Imperfect.

7. An offer to tender, under the Porto Rican Code, is not equivalent to an offer to do equity.

Tender—Keeping Alive.

8. While generally the amount of a tender must be kept alive by deposit, this is not necessary where it is impossible to know the amount; and in such case an offer to do equity, in the bill, is sufficient.

Mortgage—Redemption.

9. A redemption from an instrument declared to be a mortgage must be of the amount due, no matter whether that is the amount which the subpurchaser may have promised or not.

Opinion filed March 9, 1914.

———

*Mr. N. B. K. Pettingill* for complainants.

*Messrs. Hartzell & Rodriguez Serra* for defendants.

HAMILTON, Judge, delivered the following opinion:

This case has been in this court, in one form or another, for many years, and it is not necessary to recite the facts in detail. A man named Felix Olivieri died prior to 1905, leaving certain property and several heirs. One of these heirs was a daughter named Adelaide, who employed the firm of Pettingill & Leake to secure her share of the estate, giving them a contract under which they were to have half of the property they secured for her. Of the property in question there is concerned only what is called a preferential right or mortgage on a coffee estate known as Limon, and the other was an entirely different interest originally belonging to one Alvarado, acquired on October 24, 1900, by Olivieri from the representatives of the Alvarado estate.

The original suit brought by Pettingill & Leake for Adelaide was filed June 5, 1905, and a branch of it is found in 5 Porto Rico Fed. Rep. 607. A receiver was appointed and managed the estate.

Before final decree Adelaide Olivieri, on June 7, 1910, sold her interest in the property involved to Walter McK. Jones for $1,500, of which $800 was paid cash. Jones also purchased on May 29, 1910, from the Alvarados the second interest in property above mentioned, ignoring entirely any Olivieri claim. Pettingill & Leake, in order to protect their interest, filed the bill in this cause on July 16, 1910, alleging that Jones had both actual and constructive notice of their claim, and seeking to have him declared holding subject thereto. After various pro-

ceedings, Honorable Paul Charlton as judge of this court, on July 29, 1912, held that Pettingill & Leake were the owners of one-half interest in whatever assets belonged to Adelaide, including the first property claim above mentioned, the so-called preferential mortgage. His opinion was that the defendants should pay plaintiffs the sum of $2,500, being one half the face value of the mortgage. This result was unsatisfactory to both sides, and no decree was actually entered. The case has now been reargued and resubmitted.

1. Under the evidence Jones must be held to have bought in subordination to the claim of Pettingill & Leake, whatever that might have been. The deed from Adelaide refers to the suit in equity, and there is testimony that in this suit was filed a paper setting out the claim of the solicitors for the complainant. Moreover, the deposition of Leake shows that Jones was informed of the contract in time to have stopped payment of the money to Adelaide if he had desired, and there is no evidence that he has paid more than $800 anyway. Adelaide under the circumstances could sell her interest in the property, but she could sell no more than her interest in the property. She had already vested Pettingill & Leake with a half interest and could pass only the other half interest to Jones. It is true that under some circumstances Jones, no matter what were the rights of the grantor, might have been a bona fide purchaser for value without notice; but the evidence will not bear this construction. It follows that Jones holds the first interest described, subject to the claim of Pettingill & Leake, or Pettingill as surviving partner; in other words, that Jones and Pettingill are cotenants of this property. A decree will be entered accordingly.

2. The matter of the second property interest, however, re-

quires further consideration. The argument of the complainant is that Olivieri owned the property subject to a claim or mortgage of the Alvarados, and that, therefore, Pettingill must recover the interest of Adelaide in this property also, and thereby be entitled to redeem from Jones as the successor of the Alvarados. What, therefore, was the Alvarado claim?

The claim of Marvin and Jones (now Jones alone) arises under an instrument dated May 29, 1910, eleven days after the final decree in the original suit. This recites:

"Fourth. That afterwards there was begun in the district court of the United States for Porto Rico, commonly called the Federal court, a suit in equity at the instance of Doña Adelaida Olivieri de Arevalo and Don Lucio Arevalo y Aguilar against Antonio Olivieri y Negron and Juan Felix Olivieri y Bonilla and others, in which suit it was alleged by the complainant, among other things, that said property 'Limon,' which appeared to have been sold by Don Felix Olivieri to Don Vicente Alvarado, did not really belong to said Don Vicente Alvarado, nor to-day to his succession, since the sale was intended solely for the security of a debt which said Olivieri owed to said Alvarado.

"Fifth. That after various proceedings the court decided that in reality the deed of sale above referred to was executed solely in the character of a security and recognized in favor of the succession of Vicente Alvarado an indebtedness due from the succession of Don Felix Olivieri for the sum of $26,291.75, reckoned to the 3d day of July, 1909, said indebtedness being secured by the legal title which the creditor succession held in its favor upon the property 'Limon' above described; the same court deciding in the latter part of the order that the succession

of Alvarado could proceed to the execution of their credit as soon as there should be paid to the People of Porto Rico certain amounts due for back taxes and another debt which had been contracted by the receiver or judicial administrator, whom that court had appointed.

"Sixth. That Doña Juliana Colon and the parties named Alvarado and Colon have an agreement with the other party, Mr. Jones, for the assignment and sale of all their rights and actions against the succession of Don Felix Olivieri, an agreement which is carried into effect by the present deed, which they execute under the following conditions:

"III.

"It is well understood between the parties that the foregoing sale is carried into effect with full knowledge of all rights and obligations which may have arisen by virtue of the suit which is mentioned in previous paragraphs, and therefore that Mr. Jones acquires the legal title to the property 'Limon,' subject to all the equities which may have arisen by virtue of that litigation; and at the same time the vendors make known that they assign, renounce, and transfer in favor of the purchaser, Mr. Jones, all the rights and actions which may belong to them against the succession of Don Felix Olivieri, and especially the indebtedness which the district court of the United States for Porto Rico has recognized in their favor against the succession of Olivieri in the suit referred to, with all the interest allowed or which may be allowed, and whatever rights they may have, also allowed or which may be allowed, Mr. Jones remaining entirely subrogated to all their rights.

"IV.

"The price of the foregoing assignment and sale is the

fixed and agreed sum of $18,000, which the purchaser Mr. Jones will pay in the following form: $5,000 in a promissory note signed by him to the order of the vendors and due on the first day of January, 1911, and four other promissory notes for $3,250, each signed by the same Mr. Jones to the order of the same vendors, and to become due respectively the first day of January of each of the years 1912, 1913, 1914, and 1915."

Defendant Jones, therefore, must be held to be in the same position as the Alvarados, from whom he purchased.

3. The Alvarado claim was originally a lease to Olivieri for eight years, with a right of purchase, and they intervened in the Olivieri suit, Equity No. 196, in this court at Ponce. · They claim an absolute title, but on June 7, 1907 this court decreed as follows:

"The Alvarado interveners (naming them) being present and represented by one of said interveners, to wit, Francisco Ramon Alvarado Colon, their said counsel on their behalf announced that all said interveners prayed in the premises was the payment to them of whatever sum may be found to be due them by the Olivieri estate, and to hold their lien upon the premises described therein until the same is paid, and said statement having been made in open court, and all counsel having heard same, and it being considered that this statement of fact will eliminate considerable controversy in the premises as to the construction of the instrument dated August first, 1900, the same having been admitted by said interveners to be a mortgage lien; it is therefore considered and ordered by the court that all of the property mentioned in the said intervening petition of the said Juliana, Margarita, and Francisco Alvarado be and the same is hereby considered to belong to

Leake v. Jones.

the said Olivieri estate subject to the mortgage lien of the said interveners, said Alvarados, the difference between the parties as to the amount due upon said mortgage to be hereafter duly determined by the court. It is further understood that the court, through its officers and receiver, is to make an effort to have these and other specific liens duly ascertained as to amount, and paid off with all convenient speed, and in case that sufficient money is not realized out of said estate to entirely pay off said Alvarado claim within six months from this date, counsel for the Alvarados shall have the right to move to set aside the agreement they have this day made, the same to be then subject to the discretion of the court as to being granted or not."

On the fourth page of said order it was further provided:

"It is further ordered that the receiver, T. E. Lee, Esq., shall with all convenient speed proceed to take proofs in the matters determined in this order, that is, as to the Alvarado claim," etc.

This declaration was subject to be set aside upon application, but there is nothing to show that it was ever set aside, and in fact under this order the receiver held hearings and reported that the indebtedness on July 31, 1907, was, including interest, the sum of $33,474.77. Two years later, August 12, 1909, Judge Rodey, of this court, filed in the case a memorandum signed by the representative of the Sucesion Alvarado, amongst others, reciting that the Alvarados "have a deed absolute, which the court by consent has heretofore construed to be a mortgage." The compromise contemplated by this memorandum was not carried out.

After purchasing the Alvarado right, defendant Jones filed

a petition in case No. 196, praying that an order be made
directing the receiver to "deliver possession of the said planta-
tion to your petitioner, leaving to such further proceedings as
may seem just and equitable the determination and settlement
of the amount due and unpaid as rental of the said premises."
This was resisted by the complainants herein, who set up their
right to redeem the property, and their intention of bringing
a suit in equity for that purpose. Upon these pleadings, Judge
Jenkins of this court, entered an order adjudging petitioner
"entitled to have delivered to him the possession of said prem-
ises," directing the receiver to make such delivery, and at the
end declaring that "the court hereby expressly reserves the
right to determine hereafter all such questions as may be in-
volved in the defenses and cross bills of Messrs. Pettingill and
Leake herein and in the defense to said petition as presented on
behalf of said Felix Olivieri and Antonio Franceschi, it being
the intent of the court in and by this order to determine and
fix the right of possession of the said premises herein described."

The word "owner" is also used, but a fair construction of
this decree would seem to be that only possession was covered
by it, and that the title was not meant to be passed on.

4. A court of equity goes to the root of a matter and is
not deterred by forms. It is a long-established branch of equity
jurisprudence, that, while it will of course not change the
words of a contract, the court will look into all the circumstances
under which a contract was made, in order to determine the
proper meaning of the transaction. An absolute deed is often
determined to be really a mortgage. Peugh v. Davis, 96 U. S.
332, 24 L. ed. 775.

And there can be no reason why the same should not be

Leake v. Jones.

truc of a lease or of any other form of instrument. Particularly would this be so where the parties themselves have construed the instrument, or the court has done so during proceedings to which all were parties. Such was the case at bar. While this was originally, in form, a lease of the Limon property to Olivieri, with the privilege of purchase, the parties thereafter treated it as an absolute title in Olivieri, subject to the payment of the purchase money,—in other words, subject to a lien or informal mortgage.

5. The complainant sets up that under the Civil Code of Porto Rico, § 1438, the claim in question is a "litigated credit," and that he has the right to redeem at the price actually paid. That section is as follows:

"When a litigated credit is sold, the debtor shall have the right to extinguish the same by reimbursing the assignee for the price the latter paid for it, the judicial costs incurred by him, and the interest on the price from the day on which the same was paid.

"A credit shall be considered as litigated from the day the suit relating to the same has been answered.

"The debtor may make use of his right within nine days, counted from the day the assignee should demand payment of him."

This contemplates legal rights under a sale of an unquestioned debt. Does it apply to a suit in equity where the assignee of an alleged mortgagee claims to be owner in fee, and denies the existence of any mortgage at all? If the statute applies, then there is no limitation of nine days, because there is and will be no demand by the assignee. In the opinion of the court the section does not refer to this class of claims. A bill

to have an absolute deed or other instrument declared to be a mortgage is governed by equitable principles, and does not come within the provisions of § 1438 of the Civil Code of Porto Rico. A similar view has been taken of this question by the Supreme Court of Porto Rico in another branch of the Olivieri litigation (17 P. R. R. 1115).

6. An offer to redeem must generally be accompanied by a tender of the amount necessary for that purpose. In the case at bar there has been no tender. Is the offer in the bill to do equity sufficient?

There are general provisions as to tender of payment, contained in § 1144 of the Civil Code of Porto Rico, and the defendant contends that these have not been complied with. That section is as follows:

"If the creditor to whom the tender of payment has been made should refuse to accept it, without reason, the debtor shall remain released from all liability by the consignation of the thing due.

"The same effect shall be produced by the consignation alone when made in the absence of the creditor, or when the latter should be incapacitated to accept the payment when it is due, and when several persons claim to have a right to collect it, or when the instrument mentioning the obligation has been mislaid."

A tender in equity is not governed by this provision, for equity procedure is governed by its own rules alone. It is true that the case of Romeu v. Todd, 206 U. S. 358, 51 L. ed. 1093, 27 Sup. Ct. Rep. 724, declares that the local law as to recording deeds supersedes the equity practice as to *lis pendens;* and it may very well be that in a proper case this court will enforce

or follow the analogy of § 1144. That provision applies where a legal debt is due and refused, but does not, without more, apply to a proceeding in equity to establish a mortgage.

7. To redeem from a mortgage there must ordinarily be a tender, and under the equity practice the amount in question must be actually tendered, and tender kept alive by deposit in court. Jones, Mortg. § 1095; Frank v. Pickens, 69 Ala. 369. It is true that there are certain exceptions. If the defendant is in possession, and it is impossible, without an accounting, to know on which side the balance lies, an offer to pay, made in the bill, is sufficient. 3 Pom. Eq. Jur. § 1219. The complainant maintains that he has done what is required by the allegations in the bill that "your orators aver that they are ready and willing and now hereby offer to pay to said defendants Marvin and Jones whatever sum or sums of money they may have paid to said Alvarados under said contract, with interest thereon from the time of payment of the same, and to assume and guarantee to hold said defendants harmless from any and all liability for future payments to be made thereunder, as provided by § 1438 of the Civil Code now in force. And your orators further offer to repay to said defendants Marvin and Jones whatever sum of money they may have paid to the defendant Adelaida, provided said cession and assignment from her be delivered up and canceled as fraudulent and void."

This is not a full offer to do equity, and is by its very terms intended to be an offer under Civil Code, § 1438, which has above been determined not to apply to this class of cases.

8. The bill, however, is brought in the alternative, and as amended September 10, 1910, avers also that "in case it may be determined that they are not entitled to the benefit of said

section (1438) they hereby offer to exercise their equitable right to redeem from the prior mortgage lien held by defendant Jones for the amount found to be due thereon, with interest." This is probably not as full as could be desired, but contains the substance of an offer to do equity, and has not been demurred to or otherwise struck out. It will, therefore, for the purposes of this suit, be construed as sufficient.

9. It follows, therefore, that the complainant has the right to redeem from defendant under the instrument above construed to be a mortgage, at whatever may be the amount due thereon. The amount which Jones may have paid or promised to pay is not material, but of this the plaintiff cannot complain. His right to redeem is limited to his half of that which Adelaide would have had if the property had remained in the hands of the Alvarados.

This will require an accounting, and that matter is reserved for further orders. It will be referred to a special master upon application of either party for that purpose within sixty days from this date.

A decree will be entered accordingly.

This cause comes on for final hearing.

It is ordered, adjudged, and decreed:

1. That N. B. K. Pettingill as surviving complainant is entitled to relief under the bill filed in this cause.

2. That defendant Jones is found and declared to have acquired and now holds an undivided one-half interest in parcel I., and complainant is declared to have acquired and now holds the other one-half interest, both by purchase from Adelaide Olivieri.

3. That complainant has one-half the right to redeem from

Leake v. Jones.

defendant Jones parcel II., formerly belonging to Adelaide Olivieri; that is to say, he may redeem his one-eighteenth interest at the *pro rata* of the amount to be found on an accounting between complainant and defendant, wherein the complainant is to be charged with the debt due by Sucesion Olivieri, and credited with rental value of the lands in the hands of defendant Jones.

4. A reference will be directed to a master to state such account upon application of either party within sixty days.

5. All other matters reserved.